DUMONT *v.* KELLOGG.

## John B. Dumont v. John G. Kellogg.

*Riparian rights : Use of water : Priority of appropriation.* As between riparian proprietors, priority of appropriation of the waters of a running stream which is common to all for the driving of machinery, gives one no superior right unless it has been continued for such a period of time, and under such circumstances as would be requisite to establish rights by prescription.

*Riparian proprietors : Use of the water : Diversion.* The question as between such proprietors, of the wrongful detention of the flowing waters, to the prejudice and injury of proprietors below, is essentially different from that of the diversion of the stream from its natural course so as to turn it away from the lower proprietor, or from that of an interference by a stranger in any way to diminish the water : for these acts are wholly wrongful.

*Riparian proprietors : Reasonable use : Common rights.* Such proprietors have an equal right to the use of the water, and the right of each qualifies that of all the others ; the question as between them is whether the use made of the water by one is reasonable and consistent with a correspondent use by the rest. A fair participation and a reasonable use by each is what the law seeks to protect, and an injury that is incidental to a reasonable enjoyment of the common right can demand no redress.

*Common right : Reasonable use : General usage : Evidence.* The general usage of the country in similar cases is competent evidence of what is a reasonable and proper use of a common right.

*Heard May 8.     Decided July 8.*

Error to Allegan Circuit.

*Norris, Blair & Kingsley,* for plaintiff in error.

*Williams & Humphrey* and *Hughes, O'Brien & Smiley,* for defendant in error.

COOLEY, J.

The grievance complained of by Kellogg in the court below was that Dumont had constructed a dam across a natural water course, and by means thereof wrongfully detained the water in the stream to the prejudice and injury of the plaintiff, who was proprietor of a mill previously erected on the stream below. The reservoir created by defendant's dam was quite a large one, and plaintiff gave evidence that the flow of water in the stream below was considerably diminished by the increased evaporation and

percolation resulting from the construction of this dam. The plaintiff had judgment in the court below, and the case comes here upon exceptions, the errors principally relied upon being assigned upon the instructions to the jury, and involving the relative rights of riparian proprietors to make use of the waters of a running stream which is common to both, and to delay its flow for that purpose.

The instructions given were numerous, and the most of them were unexceptionable. Others appear to be based upon a view of the law which is not to be reconciled with the authorities. Of these are the following:

" Every proprietor of lands on the banks of a stream, and every mill owner, has an · equal right to the flow of the water in the stream as it was wont to run, without diminution or alteration; no proprietor has the right to use the water to the prejudice of the proprietors below him, without the consent of the proprietors below; he cannot divert or diminish the quantity which would otherwise descend to the proprietors below.

" He must so use the water as not materially to affect the application of the water below or materially diminish its quantity.

" If the jury find, from the evidence, that Dumont's dam and pond have diminished, by the increased evaporation and soakage occasioned by it, the flow of the water in the Dumont creek one third, or any other material amount, and that the plaintiff has sustained damages thereby, then the plaintiff is entitled to recover in this action.

" The rights of a riparian proprietor are not to be measured by the reasonable demands of his business. His right extends to the use of only so much of the stream as will not materially diminish its quantity, so that in this case the question whether defendant needs the water as he uses it in his business is entirely immaterial.

" The defendant had the right to build a dam upon his land, but he must so construct the dam and so use the water as not to injure the plaintiff below in the enjoyment of the same water, according to its natural course."

In endeavoring to determine the soundness of these instructions, we may dismiss from the mind the fact that the plaintiff had first put the waters of the stream to practical use, since that fact gave him no superiority in right over the defendant. The settled doctrine now is that priority of appropriation gives to one proprietor no superior right to that of the others, unless it has been continued for a period of time, and under such circumstances as would be requisite to establish rights by prescription.—*Platt v. Johnson, 15 Johns., 213 ; Tyler v. Wilkinson, 4 Mason, 397 ; Gilman v. Tilton, 5 N. H., 231 ;· Pugh v. Wheeler, 2 Dev. & Bat., 50 ; Hartzall v. Sill, 12 Penn. St., 248 ; Gould v. Boston Duck Co., 13 Gray, 442 ; Wood v. Edes, 2 Allen, 578 ; Parker v. Hotchkiss, 25 Conn., 321 ; Heath v. Williams, 25 Me., 209 ; Snow v. Parsons, 28 Vt., 463 ; Bliss v. Kennedy, 43 Ill., 67 ; Cowles v. Kidder, 24 N. H., 378.* It is not claimed that any question of prescription is involved, and the case is consequently to be regarded as only presenting for adjudication the relative rights of the parties at the common law to make use of the flowing waters of the stream, unaffected by any exceptional circumstances.

And in considering the case it may be remarked at the outset that it differs essentially from a case in which a stream has been diverted from its natural course and turned away from a proprietor below. No person has a right to cause such a diversion, and it is wholly a wrongful act, for which an action will lie without proof of special damage. It differs, also, from the case of an interference by a stranger, who, by any means, or for any cause, diminishes the flow of the water; for this also is wholly wrongful, and no question of the reasonableness of his action in causing the diminution can possibly arise. And had the instructions which are excepted to been given with reference to a case of diversion, or of obstruction by a stranger, the broad terms in which the responsibility of the defendant was laid down to the jury might have found abundant justification in the authorities.

But as between two proprietors, neither of whom has acquired superior rights to the other, it cannot be said that one " has no right to use the water to the prejudice of the proprietor below him," or that he cannot lawfully " diminish the quantity which would descend to the proprietor below," or that " he must so use the water as not materially to affect the application of the water below, or materially to diminish its quantity." Such a rule would be in effect this: that the lower proprietor must be allowed the enjoyment of his full common-law rights as such, not diminished, restrained, or in any manner limited or qualified by the rights of the upper proprietor, and must receive the water in its natural state as if no proprietorship above him existed. Such a rule could not be the law so long as equality of right between the several proprietors was recognized, for it is manifest it would give to the lower proprietor superior advantages over the upper, and in many cases give him in effect a monopoly of the stream.

Cases may unquestionably be found in which the rule of law is laid down as broadly as it was given by the circuit judge in this case, but an examination of them will show either. that the facts were essentially different, or that the general language was qualified by the context. Thus the language employed in the first instruction as above given seems to have been quoted from Lord Tenterden in *Mason v. Hill, 3 B. & Adol., 312.* But there it had reference to a case of diversion of water, and was strictly accurate and appropriate. The same language substantially is made use of in *Twiss v. Baldwin, 9 Conn., 291; Wadsworth v. Tillotson, 15 Conn., 373; Arnold v. Foot, 12 Wend., 331;* and probably in many other cases, and is adopted by Chancellor Kent in his Commentaries (*Vol. 3, p. 439*).—See also *Bealey v. Shaw, 6 East, 208; Agawam Canal Co., v. Edwards, 36 Conn., 497; Williams v. Morland, 2 B. & C., 913; Mason v. Hill, 5 B. & Adol., 1; Tillotson v. Smith, 32 N. H., 95.* But as between different proprietors on the same stream, the right of each qualifies that

of the other, and the question always is, not merely whether the lower proprietor suffers damage by the use of the water above him, nor whether the quantity flowing on is diminished by the use, but whether under all the circumstances of the case the use of the water by one is reasonable and consistent with a correspondent enjoyment of right by the other. " Each proprietor is entitled to such use of the stream, so far as it is reasonable, conformable to the usages and wants of the community, and having regard to the progress of improvement in hydraulic works, and not inconsistent with a like reasonable use by the other proprietors of land on the same stream above and below."— Shaw, Ch. J., in *Cary v. Daniels, 8 Metc., 477.* "The common use of the water of a stream by persons having mills above, is frequently if not generally attended with damage and loss to the mills below; but that is incident to that common use, and for the most part unavoidable. If the injury is trivial, the law will not afford redress, because every person who builds a mill does it subject to this contingency. The person owning an upper mill on the same stream has a lawful right to use the water, and may apply it in order to work his mills to the best advantage, subject, however, to this limitation: that if in the exercise of this right, and in consequence of it, the mills lower down the stream are rendered useless and unproductive, the law in that case will interpose and limit this common right so that the owners of the lower mills shall enjoy a fair participation.'—Woodworth, J., in *Merritt v. Brinkerhoff, 17 Johns., 321.* It is a fair participation and a reasonable use by each that the law seeks to protect. Such interruption in the flow " as is necessary and unavoidable by the reasonable and proper use of the mill privilege above," cannot be the subject of an action.—*Chandler v. Howland, 7 Gray, 350;* and see *Embrey v. Owen, 6 Exch., 353; Hetrich v. Deachler, 6 Penn. St., 32; Hartzall v. Sill, 12 Penn. St., 248; Pitts v. Lancaster Mills, 13 M t., 156; Bliss v. Kennedy, 42 Ill., 68.* As was said by Mr.

Justice Story in *Tyler v. Wilkinson, 4 Mason, 401,* to hold that there can be no diminution whatever, and no obstruction or impediment whatsoever; by a riparian proprietor in the use of water as it flows, would be to deny any valuable use of it. There may be and there must be allowed of that which is common to all a reasonable use by each. And if further authorities are important, *Palmer v. Mulligan, 3 Caines, 308; Dilling v. Murray, 6 Ind., 324; Snow v. Parsons, 28 Vt., 459; Hayes v. Waldron, 44 N. H., 580; Davis v. Getchell, 50 Me., 602;* and *Clinton v. Myers, 46 N. Y. 514,* may be referred to. It is, therefore not a diminution in the quantity of the water alone, or an alteration in its flow, or either or both of these circumstances combined with injury, that will give a right of action, if in view of all the circumstances, and having regard to equality of right in others, that which has been done and which causes the injury is not unreasonable. In other words, the injury that is incidental to a reasonable enjoyment of the common right can demand no redress.

We think the court erred also in declining to instruct the jury on defendant's request that in determining the question of reasonable use by the defendant they might consider, among other things, the general usage of the country in similar cases. As was said in *Gould v. Boston Duck Co., 13 Gray, 452:* "Usage is some proof of what is considered a reasonable and proper use of that which is a common right, because it affords evidence of the tacit consent of all parties interested to the general convenience of such use." And see *Thurber v. Martin, 2 Gray, 394; Snow v. Parsons, 28 Vt., 459.* Indeed in most cases this proof is the most satisfactory and conclusive that could be adduced, being established by the parties concerned, who understand better than any others what is reasonable and convenient, and who would not be likely to acquiesce in any thing which was not so.

These errors render it necessary to order a new trial. Some of the rulings on the admission of evidence seem to

29 MICH.—54.

have been very liberal, but we are not satisfied that they exceeded the bounds of judicial discretion.

The judgment will be reversed, with costs, and a new trial ordered.

The other Justices concurred.