WHITE v. WHITNEY MFG. CO.

1. WATER—WATER COURSES—DAMAGES—DAMS—JURY.—Each riparian owner along a stream has the right to use the water therein for agricultural or manufacturing purposes in a reasonable way, and the question of reasonable use is one for the jury, and in arriving at it they may consider the usage of the country, the improvement in hydraulic works, the size of the stream, its velocity and volume, the needs of the user, and what other people do in building like dams and detaining the waters for like purposes.

2. DAMAGES—SPECULATIVE—CUSTOM.—Loss of custom is speculative damages in action for damages against owner up stream for damming waters.

3. *Frost* v. *Berkeley Phos. Co., 42 S. C., 409, distinguished from this.*

4. CHARGE not on facts.

5. EVIDENCE—PRACTICE—MOTION TO STRIKE OUT.—OBJECTION to answer not responsive to question must be made by motion to strike out.

Before BUCHANAN, J., Spartanburg, March term, 1901. Affirmed.

Action for damages and for injunction by Thos. J., R. P. and A. L. White against Whitney Manufacturing Co. The Judge instructed the jury as follows, omitting formal parts:

"Now, Mr. Foreman, I am requested to make the following charges to you, and I do so: '1. Every proprietor of lands on the banks of a stream has a right to use of the water in the stream as it was wont to flow without diminution or alteration. No proprietor has a right to use the water to the prejudice of other proprietors above or below him.' I charge you that. '2. Each proprietor is entitled to enjoy the natural current and fall of the stream, but one cannot lawfully appropriate additional power to the injury of a lower proprietor; it is not lawful for one proprietor to impede or diminish the ordinary flow of the water so as to materially interfere with the enjoyment of other proprietors.' I charge you that. '3. A mill owner has no right to erect machinery requiring for its operation more water than the stream sup-

plies in its ordinary state, and to operate machinery by a full pond, discharging the water upon those in unusual quantities, so that they are unable to use it.' Well, so far as that refers to matters of fact, it is in your province. The Court will not undertake to say that the machinery put there required for its operation more water than the stream supplied at all, or that it was necessary to operate from a full pond; the Court don't undertake to say that at all, because that would be taking from your province, but if the facts recited there be true, then the legal conclusion would be true, and I so charge you. '4. What is a reasonable use of the stream is not to be determined by the requirements of the defendant's business.' Not by the requirements of the defendant's business alone, but in its relation to other business by the standard of what is a reasonable use, and I charge you that with that qualification. 'But is to be determined by considering whether its use of the stream is reasonable and appropriate to the size of the stream and the quantity of water usually flowing therein.' I charge you that. '5. One who wrongfully diverts water from another's mill cannot excuse himself by showing that the plaintiff has altered his wheels so as to require more water than formerly used.' I do not mean to say to you that there has been any diversion at all here. I don't think the complaint charges any diversion at all; it charges a continuation of the same stream; it does not charge that the current was changed at all, but the damage is claimed to be from the improper use of the water flowing along. I charge you that as law, if you find those facts to be so. '6. Plaintiff entitled to recover, though no actual present damage be shown, if the use of the water is shown to be extraordinary and unreasonable where the act complained of if continued would bar the plaintiff's right.' I charge you that. '7. A reasonable use of water is its use in a reasonable and proper manner in propelling machinery and operating a mill suited and adapted in its magnitude to the size and capacity of the stream and the quantity of water flowing thereon.' I charge you that.

"Now, Mr. Foreman, what is the issue here? What are

you to try here? Whether or not the plaintiffs have been injured at all by the defendant here; whether or not the defendant has properly and reasonably exercised his right, having in mind the right of other owners upon that same stream, the use that he had to make of the water that flowed in that stream; whether he made a proper use of it, a reasonable use of it, such use as according to the business—and you can take into consideration what is the usage and customs in that respect—he ought to have made. A man has a right to use the water of a stream so that he does not affect or injure any one else, and the injury must be an injury—it must not be a mere immaterial injury. The diminution in the quantity of water must not be a mere immaterial diminution at all; it must be an amount sufficient to call it material, because in the very nature of things some water will be lost in the operation of these enterprises one way and another. It is whether or not there has been a reasonable use of the right that one had in connection with that stream and the water and the use of it. Every man has a right to the reasonable use and enjoyment of a current of running water, when it flows through or on his own land, for mill purposes, having a due regard for the like reasonable use of the stream by all other proprietors above and below him. He must so exercise his right as to do no harm to any one else or to impair any one else's rights, exercising a right according to the custom, the usage of the business—no unreasonable exercise of the right at all, no unreasonable use or appropriation of the water. In determining what is such reasonable use, a just regard must be had to the force and magnitude of the current, its height and velocity, the state of improvement in the country in regard to mills and machinery, and the use of water as a propelling power, the general usage of the country in similar cases and all other circumstances bearing upon the question of fitness and propriety in the use of water in the particular case. You may take into consideration the size of the structure, how they were made, the capacity and size of the stream and everything in connection with it, and find

out whether or not there was reasonable use. If any party claims a special right to the use of the water more beneficial to himself and more burdensome upon some other owner above or below, he must pay for it, because he is entitled only to a reasonable use of that water. The man above is entitled to the water—he must use it reasonably. It is passed on, flows on, down to the person below him, and so on and so on, each of whom has a reasonable use of that water.

"Now, Mr. Foreman, what is reasonable use? The owner of land along a stream has a right to use the water, so he does not interfere, or unreasonably interfere, with an equally satisfactory enjoyment of this common right by all proprietors. He must make such a reasonable use of the waters of the stream as is consistent with the reasonable use of it by others. What is a reasonable use must depend upon circumstances, such as the width and depth of the stream, the capacity of the stream and the volume of water, the fall of it, the previous usage and the state of improvement in manufacturing and the useful arts, and one must not take more than he should consistent with the rights of others. The necessity of one's business cannot be the standard of another's right in a thing which belongs to both. It is not what is necessary to one man's business or another man's business, although you have the right to take into consideration what business men were engaged in—for instance, on that stream, the extent of the business, how that business was operated—so as to show whether or not the defendant has took more than was reasonable, or detained water in an unreasonable manner, or took more in quantity than should have been taken. Reasonable implies the right to use the water of the stream without materal or substantial diminution. That is to say, one has the right to take the stream as it is accustomed to come, without any material increase or diminution of the stream; not but what possibly it will become greater at times than other times, but he has a right to the reasonable use, whatever you may find to be the reasonable use. Each man has the reasonable use, and he must

17—60

exercise his right, or should exercise his right, as not to impair the rights of another who is equally entitled with himself to the reasonable use of the water of that stream.    If one needs more for his business than he is entitled to, then he must get it like other persons and must pay for it.    If one wants any greater right in the stream than the ordinary owner of land along it is entitled to, he must purchase it, just as he does any other property, from those who will be injured by it; and if one wants an unreasonable use of the stream, desires it for some business, more than he would have by reasonable use of it, and thereby deprive some one else of that reasonable use to which that other person would be entitled, then he must get it by paying for it.    What is a reasonable use being left to you.    You gentlemen are to say, under all the facts and circumstances, what is the reasonable use upon this stream to which the plaintiffs and defendant were entitled respectively, and to say whether or not the plaintiffs have been injured here, whether or not the defendant has made an unreasonable use of the stream, under the allegations of the complaint.    What is a reasonable use, must be consistent with a like reasonable use by the proprietors above and below.    A man must make such use of it as is consistent with the rights of the person above him and below him.    What is a reasonable use, must depend on circumstances, such as the depth of the body of the stream, width of the stream, and the volume, force of the current, size of the mills, structures, dams, all those things which enter into the case, throwing or that may throw any light upon the case at all.    You are to take into consideration how these things are done, whether or not the plaintiffs here have been deprived of the reasonable use of the water by the unreasonable use of the defendant, the Whitney Manufacturing Company; you are to take into consideration the usage, what was the proper way, and what was the way, those mills were run, what was the usage in the country, what is the usage of this section, the different manners in which the mills were run, if you find there were different manners.    All those things are facts for

your consideration. The Court cannot instruct you at all, cannot tell you what you are to find, as a matter of fact. What is or is not a reasonable use in a particular case, is always a question for the jury. The Court is confined merely to saying to you that you, gentlemen, are called upon to say whether or not the use made of the stream was a reasonable use, under the circumstances, or an unreasonable use upon the part of the defendant, the Whitney Manufacturing Company. If it was an unreasonable use, under the circumstances, taking everything into consideration, the capacity of the stream, how it was the custom to run those mills, etc., if it was an improper use, then you may find for the plaintiffs whatever damages you come to the conclusion they have sustained by such improper use and by the improper deprivation of this water, taking the water they were accustomed to receive, etc. If you find that there has been a reasonable use on the part of the defendant, then your verdict should be for the defendant. . If you find for the plaintiffs, you may find for the plaintiffs not exceeding the amount of $500. If you find for the defendant merely, you say: We find for the defendant, writing your verdict out.

"Now, gentlemen, you cannot put into your verdict matters which are speculative in this nature. You cannot give speculative damages, what one might have done; but damages are to be given that you can put your hand on, that you can reduce to a certainty—not matters in the skies at all, not matters dependent upon two or three contingencies. Damages, if you give damages, must be for what they have been injured, and must not be speculative. They cannot recover damages, for instance, for being deprived of the customers or things of that kind, because that is too uncertain, too contingent, what the law books call speculative. Their damages are confined to the damages they have received, the actual damages, the amount that they have been injured in their rights, not exceeding the amount here alleged to have been the injury, $500.

"Mr. Carson: 'I am not sure whether your Honor so

charged. I don't think you did. I would like for you to instruct the jury that if the water has been unreasonably detained by the defendant, the plaintiff is entitled to a verdict, although the injury might have been nominal, for the purpose of preserving his rights; that he may have a verdict and nominal damages, if his rights have been infringed, although no material damages have been proven.'

"By the Court: I have so charged them. But there must have been some actual damages, must have been some injury. They sue here for the violation of a right. If this right has been impaired, you can give damages to the amount of that impairment. If this right has not been impaired to the amount of any damages, you need not give them. In their right—and by that I don't mean to say the money right necessarily—but in this right, if they have been injured at all, in the right that they had to receive certain waters that were appropriated by the defendant to their wrong, then you may say so by the amount in money that you think they have been injured by it, according to the proof adduced here upon the stand, if there has been any adduced here upon the stand; in other words, if they have been injured, you respond to their allegation in the complaint by saying to what extent they have been injured. If they have not been injured at all, then you will find for the defendant.

"You have a right to consider everything adduced here upon the stand, what the witnesses say. It is for you to say what is the proper verdict to be drawn from their testimony here. You are to draw such inferences as you think the testimony warrants, such conclusions as you think the evidence justifies."

The jury found for the defendant, judgment was thereafter entered, and the plaintiffs appeal on following exceptions:

"First. 'A man has the right to use the water of a stream, so that he does not affect or injure any one else, and the

injury must be an injury; it must not be a mere immaterial injury;' and thereby charging in effect that the plaintiffs were not entitled to recover unless they should prove a serious injury.

"Second. 'He must so exercise his right as to do no harm to any one else or to impair any one else's rights, and exercising a right according to the custom, the usage of business, no unreasonable exercise of the right at all—no unreasonable use or appropriation of the water,' and thereby charging the jury that if the defendants had used the water according to the custom and usage of business, they had made no unreasonable use or appropriation of the water.

"Third. 'In determining what is such reasonable use, a just regard must be had to the force and magnitude of the current, its height and velocity, the state of improvement in the country in regard to mills and machinery, and the use of water as a propelling power, the general usages of the country in similar cases, and all other circumstances bearing upon the question of fitness and propriety in the use of water in a particular case;' and thereby charging the jury as to force and effect of certain evidence, and that what was a reasonable use of water in a particular case depended upon the number of mills in the country and the extent to which water was used as a propelling power.

"Fourth. 'You may take into consideration the size of the structure, how it was made, the capacity and size of the stream and everything in connection with it and find out whether or not there was a reasonable use;' and thereby instructing the jury that the size of the structure, method of building, were facts from which the jury could arrive at a conclusion as to whether a reasonable use or unreasonable use was made of the stream.

"Fifth. In charging the jury that the size of the stream and previous usage made of it and state of improvement in manufacturing and useful arts were the tests as to what constituted a reasonable use of the stream.

"Sixth. In charging the jury that the character, extent

and manner in which the business of other men upon the same stream was conducted, was evidence which would show whether or not the defendants detained the water in an unreasonable manner.

"Seventh. 'What is a reasonable use must depend on circumstances, such as the depth of the bed of the stream, width of the stream and volume and force of the current, size of the mills, structures, dams;' and thereby charging the jury that the reasonableness or unreasonableness of the use of the water in the stream depended upon the size of the mill and the dam.

"Eighth. In instructing the jury that it was for them to say what was the reasonable use of the water upon this stream, to which the plaintiffs and defendant were entitled respectively.

"Ninth. In instructing the jury that they were to take into consideration the usage of the country and the usage of this section in determining whether or not the plaintiffs had been deprived of the reasonable use of the water.

"Tenth. In instructing the jury that the plaintiffs could not recover damages for being deprived of customers at their mill by the detention of water by the defendant.

"Eleventh. In charging the jury that to entitle the plaintiffs to recover, there must have been actual damage.

"Twelfth. In charging the jury that the usage and custom of the country was evidence of the defendant's reasonableness of the use of the water without regard to the length of time such usage had existed.

"Thirteenth. In charging the jury that the plaintiffs could be deprived of a legal right by the custom and usage of the country.

"Fourteenth. In charging the jury that usage and custom was good which conflicted with an established rule of law.

"Fifteenth. In charging the jury that the usage generally made in the country was reasonable and that the defendants had the right to use it in the same way.

"Sixteenth. In overruling plaintiff's objections to the fol-

lowing questions propounded to the following witnesses, upon the ground that they were all irrelevant and incompetent:

"Seventeenth. T. J. White, witness. (a) 'Has it been the custom at your mill to shut down the gate at night? (b) Do you, or do you not, know that it is the custom of the mills of this county and this section of the State to shut down their gates at night? (c) Is it not the usage of the mills in this county to shut down their wheels at night, as far as you know of other mills?'

"Eighteenth. J. B. Cleveland, witness. '(a) Do you know what the usage or custom is at cotton mills in this county as to shutting off the water at the end of work time?'

"Seventeenth. George Ladshaw, witness. '(a) On what lines of theory did you develop it? (b) Just state to the Court and jury how you developed it, and why you developed it in the way you did?' In allowing the witness to state what was good engineering practice all over the country and a reasonable detention of water according to law. (c) 'What is the custom and usage of this country as to shutting gates of mills and detaining water?'

"Eighteenth. M. G. Stone, witness. '(a) What is the usage of mills in this section as to shutting down the gates at night and on Saturdays? (b) Did you do that way at Pacolet? (c) Do they do that way at Clifton? (d) During the time that you were superintendent at Pacolet mills were you ever troubled with low water? (e) I wish you to state to the jury what happened at times. (f) State what sometimes happened at Pacolet mills from the detention of water above? (g) How do the mills in this country manage to store water against low water times?'

"Nineteenth. K. McGowan, witness. '(a) Do you know what the usage of cotton mills in this part of the country is as to shutting off their water at night and on Saturdays? (b) Was there more than one purpose of doing that at any of the mills you were connected with? (c) Why did you

build that dam? (d) It was the usage of the Pelham mills
to do the same way?'

"Twentieth. T. B. Martin, witness. '(a) What is the
usage as to mills of this country as to shutting down their
gates? (b) What is the custom of mills generally in this
country? (c) What effect does that have upon the water
in your pond and other ponds? (d) What effect does this
have upon the fellow below you?' "

*Mr. Ralph K. Carson,* for appellants, cites: *As to plain-
tiffs' right to recover damages:* 4 L. R. A., 572. *What is a
reasonable use of the water, is a question of law and impro-
perly sent to the jury:* 42 S. C., 409; 2 Hill, 634. *Defend-
ant could not acquire a right to detain the water unreason-
ably by the usage or custom of the country:* 39 L. R. A.,
107; 17 Johns., 306.

*Messrs. Simpson & Bomar,* contra, cite: *In determining
question of reasonable use, testimony is competent as to size
of stream, force, magnitude and velocity of current, depth
and width:* 2 Gray, 394. *And usage of country:* 2 Gray,
394; 13 Gray, 451; 28 Vt., 459; 18 Am. R., 106. *As to use
of water by upper proprietor:* 2 Hill, 634; 36 L. R. A., 699;
18 Am. R., 101; 5 *Id.,* 526; 28 Ency., 955 to 958; 1 Rich.,
444; 11 Rich., 153.

April 9, 1901. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The plaintiffs own and
operate a corn and flour mill, together with a cotton gin and
ice factory, situated on Lawson's Fork Creek, which are pro-
pelled by the waters of that stream; and the defend-
ant owns and operates a cotton factory situate on the
same creek, some distance above plaintiffs' mill, the
machinery in which is likewise propelled by the waters of
the said creek. The plaintiffs allege that the defendant
company has restrained the waters of said creek from their
natural flow and detained the same for its own purposes,

without regard to the rights of the plaintiffs, whereby the plaintiffs have sustained damages which they seek to recover in this action, as well as to enjoin the defendant company from thus restraining and detaining the waters of said creek. The well settled rule of law upon this subject is thus stated in 3 Kent's Com., 353: "Every proprietor of lands on the banks of a river has naturally an equal right to the use of the water which flows in the stream adjacent to his lands, as it was wont to run (*currere solebat*) without diminution or alteration. No proprietor has the right to use the water to the prejudice of other proprietors, above or below him, unless he has a prior right to divert it, or a title to some exclusive enjoyment. He has no property in the water itself, but a simple usufruct while it passes along. *Acqua currit et debet currere,* is the language of the law; though he may use the water while it runs over his lands, he cannot unreasonably detain it or give it another direction, and he must return it to its ordinary channel when it leaves his estate. Without the consent of the adjoining proprietor, he cannot divert or diminish the quantity of water, which would otherwise descend to the proprietor below, nor throw the water back upon the proprietor above, without a grant or an uninterrupted enjoyment for twenty years, which is evidence of it. This is the clear and settled general doctrine on the subject, and all the difficulty that arises consists in the application. The owner must so use and apply the water as to work no material injury or annoyance to his neighbor below, who has an equal right to the subsequent use of the same water. Streams of water are intended for the use and comfort of man; and it would be unreasonable and contrary to the universal sense of mankind to debar every riparian proprietor from the application of the water to domestic, agricultural and manufacturing purposes, provided the use of it be made under the limitations which have been mentioned, and there will, no doubt, evidently be, in the exercise of a perfect right to the use of the water, some evaporation and decrease of it, and some varia-

tions in the weight and velocity of the current; but *de minimis nos curat lex,* and a right of action by the proprietor below, would not necessarily flow from such consequences, but would depend upon the nature and extent of the complaint or injury, and the manner of using the water. All that the law requires of the party, by or over whose land a stream passes, is, that he should use the water in a reasonable manner, and so as not to destroy or render useless, or materially diminish, or affect the application of the water by the proprietor below on the stream; he must not shut the gates of his dams and detain the water unreasonably, or let it off in unusual quantities, to the annoyance of his neighbor. Pothier lays down the rule very strictly, that the owner of the upper stream must not raise the water by dams, so as to make it fall with more abundance and rapidity than it would naturally do and injure the proprietor below. But this rule must not be construed literally, for that would be to deny all valuable use of the water to the riparian proprietors. It must be subjected to the qualifications which have been mentioned, otherwise rivers and streams of water would become utterly useless either for manufacture or agricultural purposes." This general doctrine upon the subject has been expressly recognized in our own case of *Omelvany* v. *Jaggers,* 2 Hill, 634. It is proper to note that there is serious misprint in that case, on page 640, where, in the quotation from Kent, the word "reasonably" is substituted for the word "unreasonably." That case was recognized in the subsequent case in *Garret* v. *McKie,* 1 Rich., 444; see, also, *Chalk* v. *McAliley,* 11 Rich., 153. 'See, also, to the same effect Angell on Water Courses, secs. 115-119 of the 5th edit., and 28 Am. & Eng. Ency. of Law, 955, *et seq.* The case of *Dumont* v. *Kellogg,* 29 Mich., 420—reported, also, in 18 Am. Rep., 102—is very much like the case under consideration. In that case it was held that the different owners of land through which a stream flows are each entitled to a reasonable use of the same, and an injury to one owner, incidental to the reasonable use of the stream by

another, gives no right of redress.    There, as here, the grievance complained of by the plaintiff was that the defendant had erected a dam across the natural water course, and by means thereof wrongfully detained the water in the stream to the prejudice and injury of the plaintiff, who was the proprietor of a mill previously erected on the stream below; and the case turned upon the question as to whether the defendant had made an unreasonable use of the water in the stream, as it was passing through his land.    In delivering the opinion of the Court, Cooley, J., uses this language: "As between two proprietors, neither of whom acquired superior rights to the other, it cannot be said that one 'has no right to use the water to the prejudice of the proprietor below him,' or that he cannot lawfully 'diminish the quantity which would descend to the proprietor below,' or that 'he must so use the water as not materially to effect the application of the water below or materially to diminish its quantity.'    Such a rule would be in effect this: That the lower proprietor must be allowed the enjoyment of his full common law rights as such, not diminished, restrained or in any manner limited or qualified by the rights of the upper proprietor, and must receive the water in its natural state, as if no proprietorship above him existed.    Such a rule could not be the law so long as equality of right between the several proprietors was recognized; for it is manifest it would give to the lower proprietor superior advantages over the upper, and in many cases give him, in effect, a monopoly of the stream."    And after referring to the authorities, he proceeds as follows: "But as between different proprietors on the same stream, the right of each qualifies that of the other, and the question always is not merely whether the lower proprietor suffers damage by the use of the water above him, nor whether the quantity flowing on is diminished by the use, but whether, under all the circumstances of the case, the use of the water by one is reasonable and consistent with a correspondent enjoyment by the other."    This he follows with the following quotation from the opinion of that great

Judge, Shaw, C. J., in *Cary* v. *Daniels,* 8 Metc., 477: "Each proprietor is entitled to such use of the stream, so far as it is reasonable, conformable to the usages and wants of the community, and having regard to the progress of improvement in hydraulic works, and not inconsistent with a likewise reasonable use by the other proprietors of land on the same stream above and below." There can be no doubt, from the reasoning employed and the authorities cited by that distinguished jurist, Cooley, J., in the case from which we have felt justified in making these liberal quotations, that the conclusion which he reaches is sound—that an injury incidental to a reasonable enjoyment of the common right by the riparian proprietor above, affords no ground for legal redress by the proprietor below. It seems to be well settled that the question whether a riparian proprietor has made a reasonable or unreasonable use of the water in a stream, is a question of fact for the jury. As is said in 28 Am. & Eng. Ency. of Law, 955-6: "The reasonableness of use is a question of fact to be determined by the jury from the circumstances of each particular case; from a consideration of the capacity of the stream, the adaption of the machinery to it, and upon all attendant circumstances—one of which is the general usage of the county in similar cases. As was said by the late Mr. Justice Cooley, in the case of *Dumont* v. *Kellog, supra:* "We think the Court erred, also, in declining to instruct the jury, on defendant's request, that in determining the question of reasonable use by the defendant, they might consider, among other things, the general usage of the country in similar cases. As was said in *Gould* v. *Boston Duck Co.,* 13 Gray, 452: 'Usage is some proof of what is considered a reasonable and proper use of that which is a common right, because it affords evidence of the tacit consent of all parties interested to the general convenience of such use;' and see *Thurber* v. *Martin,* 2 Gray, 394; *Snow* v. *Parsons,* 28 Vt., 459. Indeed, in most cases this proof is the most satisfactory and conclusive that could be adduced, being established by the parties concerned, who

understand better than any others what is reasonable and convenient, and who would not be likely to acquiesce in anything which was not so." It seems to us that a consideration of the charge of the Circuit Judge to the jury (a copy of which, together with the exceptions of the appellant should be incorporated by the Reporter in his report of the case), will show that the instructions to the jury were in conformity to the principles of law laid down above, and, therefore, none of the exceptions to the charge can be sustained.

We will now very briefly consider the exceptions as they have been presented in the appellant's argument here. The first, tenth and eleventh exceptions, relating to damages, may be considered together. The first is taken under a misconception of the Judge's charge, for he nowhere instructed the jury that the plaintiffs were not entitled to recover unless they proved "a serious injury."

As to the tenth, it cannot be sustained, if for no other reason, because even if the error there imputed was committed, it was harmless error; for as the verdict establishes the fact that the plaintiffs were not entitled to recover *any* damages, any error in instructing the jury as to the elements composing the damages would be wholly immaterial. Besides, we are not prepared to admit that the loss of custom at plaintiffs' mill would constitute an element of damage, as such damage would be more or less speculative, for the loss of custom might have resulted from other causes than the conduct of defendant. See *Pearson* v. *County of Spartanburg,* 51 S. C., 480.

As to the eleventh exception, the fact that the Judge charged plaintiffs' sixth request, sufficiently disposes of that exception.

As to the eighth exception, the authorities above cited showing that whether there was a reasonable use of the water by the defendant, is a question of fact for the jury, sufficiently disposes of that exception. The case of *Frost* v. *Berkeley Phosphate Co.,* 42 S. C., 409, cited by appellant, is not in point. There the question was

as to the unreasonable and unlawful use of a person's own premises, while here the question is as to what would be a reasonable use of water to which the parties had a common right.    In addition to this, it was not held that the question whether the use of a person's own exclusive property was unreasonable or unlawful, could not be left to a jury; but the error there complained of was that such question should not have been left to the jury without instructions as to what would constitute an unreasonable or an unlawful use of a man's own exclusive property.    So, also, the quotation from the case of *Omelvany* v. *Jaggers, supra,* is misleading, as it takes no notice of the limitation or qualification of the general rule, as shown in the authorities above cited.

All the other exceptions, down to the sixteenth, imputing errors in the charge, *alleged* to have been given to the jury, in regard to what would be a reasonable use of the water by the defendant, the effect of the usage of the country, and other circumstances which the jury might consider in determining the question, and whether there had been a reasonable or unreasonable use of the water by the defendant, are more or less open to the objection that they do not correctly represent the charge of the Judge.    We do not understand that the jury were instructed that the defendant could by the usage of the country acquire the right to unreasonably detain the water, nor that any one of the circumstances referred to in the charge—such as the size and velocity of the stream, the usage of the country, the progress of improvement in machinery, and the other circumstances—would constitute a test of the question whether the defendant had made a reasonable or an unreasonable use of the water, but that all these circumstances might be considered in determining such questions.    This certainly was proper under the authorities above cited.

In the argument of appellant here, he imputes error to the Circuit Judge by charging on the facts.    A sufficient answer to this question is that there is no exception raising that point.    But even if there was, we are

unable to discover wherein the Circuit Judge has disregarded the constitutional provision upon that subject.

Lastly, we come to the several exceptions raising questions as to the admissibility of certain testimony, from the sixteenth to the twentieth, though really the twenty-second, as there is a clerical error in numbering the exceptions. The points raised by all these exceptions, except the one numbered "seventeenth," though it should be the "nineteenth," are disposed of by what has already been said. The nineteenth, as to Ladshaw's testimony, requires some notice. That witness was examined as an expert, and after stating that he had developed the water at the defendant's mill, and the question asked him was how he developed it, and why you developed it in the way that you did, to which he replied that he thought it was good engineering so to do; and then proceeded to state what was considered good engineering practice all over the country. This was objected to, and the objection was overruled, and the witness said: "According to ordinary engineering methods, what we call a twelve-hour basis is reasonable detention of water, according to law and engineering practice, and that is the case in a number of States elsewhere. We found that the case in North Carolina, and we had to provide for it—Mr. Carson: I object to North Carolina. *By the Court.* You can't tell that—tell the basis on which you worked. A. That was the way we developed Whitney." It will be observed that what the witness said as to the twelve-hour basis being a reasonable detention of water, according to law and engineering practice, and as to the usage in this respect in other States, was not in response to any question, and when it was objected to, it was ruled out, and there was no motion to strike out that portion of his testimony. The question asked the witness was not objected to, and if the real objection was, as seems from the argument, to that portion of the testimony which was not responsive to the question, then appellant should have moved to strike out the testimony.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.