6803

### GRIFFIN v. NATIONAL LIGHT AND THORIUM CO.

1. PARTIES—WATERS.—In an action for damages and to enjoin an upper owner from flooding a mill pond with sand and polluting the waters, one from whom the owner of the pond has acquired the right to flood a portion of the land flooded is not a necessary party.

2. WATERS—DAMAGES.—A lower owner has a cause of action against an upper owner on a stream for negligently placing sand dug by him out of the stream in such condition as that it easily washes into and fills up the pond, and for digging up a dirty swamp mud which pollutes the water.

Before GARY, J., Greenville, April, 1907.    Affirmed.

Action by Thomas M. Griffin against National Light and Thorium Company. The defendant interposed the following demurrer to the complaint:

I. "That it appears upon the face thereof that there is a defect of parties in that William M. Lenderman, the person seized of the remainder of the premises mentioned in the complaint, other than the part alleged to be held by the plaintiff, is not made a party plaintiff in the action.

II. "The complaint does not state facts sufficient to constitute a cause of action in the following particulars:

1. "The plaintiff is maintaining a milldam on his own land, 'which dam backs, and at all the times hereinafter mentioned, backed the water in said creek about three hundred yards above said dam, about one hundred yards thereof being on plaintiff's said tract of land and about two hundred yards thereof being on said land of William M. Lenderman adjoining the same.' It does not appear that the said William M. Lenderman is a party to this suit, or that he has authorized in any legal manner the plaintiff to maintain this action on his behalf.

2. "It is not alleged in the complaint that the plaintiff requires for the uses of his corn and flour mill, or that such use if required is available, any more than the natural flow

of Reedy Ford Creek. It is alleged he uses steam for his other machinery. It failing to appear that the water stored in the pond is a necessary part of the water-power, a deposit of sand in the creek could cause the plaintiff no damage, as notwithstanding the deposit the natural flow of the water to the plaintiff's wheel has not been impeded or diminished.

3. "It does not appear from the complaint that the defendand has been guilty of any unreasonable use of the water, or that it has deposited therein any foreign or delleterious or hurtful matter, but on land not belonging to the plaintiff the defendant has mined a mineral found in the soil, being a part of the land itself and an essential part of its value and, therefore, composing a portion of the mineral wealth and resources of the State, and in prosecuting its operations has only thrown out the sand which has been washed down on its land from the bed of the stream, and has deposited the same upon the banks or adjacent thereto. No act of damage is complained of save and except that the said sand, which otherwise would naturally be carried down the bed of the stream, has been caught in the said mill pond, detained there by the dam and not allowed to flow down the natural channel of said creek. The dam is the property of plaintiff, and it does not appear that it is authorized by any law or statute for the use of the county or the State.

4. "It is not alleged that the defendant 'in digging up a dark and dirty swamp mud which pollutes the water in said stream rendering it black in color and rendering it unfit to be used in said boiler, filling it with black mud and cankering the iron, thereby damaging the said boiler and rendering it less efficient and making it dangerous from liability to crack and explode, and rendering the said water unfit for plaintiff's stock to drink' has been guilty of any negligence and no actionable wrong is stated. Plaintiff has no legal right to prevent defendant from developing its own property by extracting valuable minerals where the natural result would be to muddy the stream. It is not alleged that the

plaintiff has no other source of supply for his boiler and stock, or that the smell or condition of the water constituted a nuisance or a menace to health.

5. "It does not appear that the plaintiff has suffered any damage to his lands, property or rights, nor that there are any negligent acts of defendant from which damages could be computed, the mere statement that his cattle will not drink the water, that it is unfit for his boiler, and that his water-power has been impaired being too general and not sufficient in law to show the existence of a right or the invasion thereof.

6. "It is not shown that the bottom land of the plaintiff has been damaged, and the allegation that an attempt to wash out the sand through the flood gates would spread the sand over said land is purely speculative. On the contrary, plaintiff says he will not open the gates to allow the escape of the sand by the natural flow of the stream which his dam obstructs."

From order overruling demurrer, defendant appeals.

*Messrs. Sirrine & Charles,* for appellant, cite: *There is a defect of parties plaintiff:* Pom. Code Rem., Sec. 161. *Laws governing rights of riparian owners:* 60 S. C., 254; 56 Am. R., 89; 2 Farn. on Wat., 1833; 13 L. R. A., 117.

*Mr. B. M. Shuman,* contra, cites: *Rights to overflow may be obtained by grant or reserve in conveyance:* 8 Ency., 708. *Complaint stating any cause of action is not demurrable:* 28 S. C., 86. *Rights of owner of dam and liability for infringing thereon:* 8 Ency., 700, 707, 719; 2 Rich., 156; 58 S. C., 557; 24 L. R. A., 64; 49 S. C., 95; 3 L. R. A., 606; 8 Am. D., 404; 41 L. R. A., 748, 751; 157 Pa., 490; 11 Metc., 281; 2 Mont., 181. *Pollution:* 49 S. C., 95; 24 L. R. A., 64; 41 L. R. A., 751. *Lower proprietor may maintain action for invasion of his rights without proof of special injury:* 32 N. H., 94; 41 L. R. A., 756; 69 Conn., 56; 1 McC., 543.

March 17, 1908.  The opinion of the Court was delivered by

MR. JUSTICE GARY.  This is an appeal from an order overruling a demurrer to the complaint.

The complaint, as stated in the argument of the appellant's attorneys, stripped of its formal parts, contains, in brief, the following allegations:

"Plaintiff is the owner of a tract of land in Greenville County containing forty-nine and three-fourths acres, through which a stream of water flows, known as Reedy Fork Creek, which stream is formed by the junction of two brooks, which unite about one-half of a mile above a mill-pond, maintained by plaintiff on said creek.  The dam is twelve feet high, about three hundred yards long and backs water about three hundred yards above said dam, about one hundred yards thereof being on plaintiff's said tract of land, and about two hundred yards thereof being on land of one William M. Lenderman, adjoining the same, the plaintiff now and at all the times hereinafter mentioned, having and owning the right in fee simple, to back water on land of said William M. Lenderman and overflow the same.

"Plaintiff maintains a corn and wheat mill operated by water-power, and a ginnery, sawmill and woodworking machinery operated by steam, which is generated in a thirty-five-horsepower boiler, taking water from the stream. The engine also operates a small dynamo.  About fifteen months ago defendant commenced digging monazite, in the beds of the forks of the creek; and also on the banks and on certain bottom lands adjoining the same.  That in gathering the monazite defendant has 'negligently, and in disregard of plaintiff's rights, placed sand, so dug up by them in large quantities, in said streams and on the banks thereof, and in the said bottom lands adjacent thereto,' and in addition to this are guilty of 'negligently leaving it there in a loose condition and negligently allowing it to remain where so placed.'  The defendant has also blasted out a shoal on its land and 'whenever an average shower of rain falls on

said forks of said creek, said sand has been and is washed and carried by the water, through said streams in the plaintiff's mill-pond in large quantities, which has been settling and is still settling in plaintiff's said pond, until now it has been filled at least one-fourth of its depth, before said sand commenced to be washed therein, so that plaintiff's water-power furnished by said pond, has been greatly impared and rendered very much less efficient and very much weakened.'

" 'That the defendant in digging said monazite as aforesaid dug up and is digging up a dark and dirty swamp mud, which pollutes the water in said streams, rendering it black in color and rendering it unfit to be used in the boiler, filling it with black mud and cankering the iron, thereby damaging the said boiler and rendering it less efficient and making it dangerous from liability to crack and explode, and rendering said water unfit for plaintiff's stock to drink, which stock he kept and watered from said stream, and rendering said water offensive in smell, the said water in said polluted condition flowing through said creek over plaintiff's said land.'

"That it would be impossible to remove all of said sand from said pond, by washing or blowing out the same through the flood gates of said dam, and if plaintiff should attempt the same, he has about eight acres of very productive bottom land on said creek, just below said dam, which would be utterly ruined thereby, by reason of said sand being spread over it, by the overflow of the water and said sand settling on the same.

"It is alleged that the plaintiff has been damaged in the sum of nineteen hundred and ninety-five dollars, and is about to suffer irreparable injury, and he asks for said sum of money and for a permanent injunction."

The defendant demurred to the complaint on two grounds, the first of which was: "That it appears upon the face thereof, that there is a defect of parties, in that William M. Lenderman, the person seized of the remainder of the premises mentioned in the complaint,

other than the part alleged to be held by the plaintiff, is not made a party plaintiff in the action."

The plaintiff is not seeking any relief against Lenderman, and the appellant has not made it appear that he is a necessary party in determining whether the defendant has violated the rights of the plaintiff. This ground of demurrer was, therefore, properly overruled.

2.      The second ground of demurrer was, that the complaint did not state facts sufficient to constitute a cause of action, for the reasons set forth in the demurrer.

The rights of the owners of the upper and lower stream have recently been considered by this Court, in the case of *White* v. *Mfg. Co.,* 60 S. C., 254, 38 S. E., 456, which is conclusive of the question under consideration.

In that case Mr. Chief Justice McIver, as the organ of the Court, in commenting on the case of *Dumont* v. *Kellogg,* 29 Mich., 420, used this language: "In that case it was held that the different owners of land, through which a stream flows, are each entitled to a reasonable use of the same, and an injury to one owner, incidental to the reasonable use of the stream by another, gives no right of redress."

In the case of *Dumont* v. *Kellogg, supra,* it is said: "As between different proprietors on the same stream, the right of each qualifies that of the other, and the question always is, not merely whether the lower proprietor suffers damage by the use of the water above him, nor whether the quantity flowing on is diminished by the use, but whether, under all the circumstances of the case, the use of the water by one is reasonable and consistent with a corresponding enjoyment by the other."

The rule is thus stated by Chief Justice Shaw in *Cary* v. *Daniels,* 8 Metc., 477: "Each proprietor is entitled to such use of the stream so far as it is reasonable, conformable to the usages and wants of the community, and having regard to the progress, improvement in hydraulic works, and not

inconsistent with a likewise reasonable use, by the other proprietors of land, on the same stream above and below."

In the case of *White* v. *Mfg. Co.*, 60 S. C., 254, 38 S. E., 456, the Court stated that "it seems to be well settled that the question whether a riparian proprietor has made a reasonable or unreasonable use of the water in a stream is a question of fact for the jury."

The allegations of the complaint are to the effect, that the defendant, in disregard of the plaintiff's rights, negligently placed the sand which it dug up in such a manner as unreasonably to injure the property of the plaintiff, also that in digging the monazite, the defendant also dug up a dirty swamp mud, which polluted the waters of the streams and rendered them unfit for use.

The authorities hereinbefore mentioned, to which may be added the case of *Threatt* v. *Mining Co.*, 49 S. C., 95, 26 S. E., 970, show that the demurrer was also properly overruled on the second ground.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.