## ALSTON v. LIMEHOUSE.

1. RES JUDICATA—INJUNCTION—REAL PROPERTY.—FINDINGS OF FACT by Circuit Judge in passing on questions in action for perpetual injunction against trespass on lands in granting temporary injunction are not upon the merits whether so stated by him or not, and cannot in any way effect such questions in trial on merits.

2. INJUNCTION—APPEAL.—Order granting temporary injunction is ordinarily not appealable.

3. IBID.—IBID.—REFERENCE.—Order granting reference generally in action for perpetual injunction against trespassing on lands, where defendants deny title in plaintiff, is error, and appealable.

Before GAGE, J., Charleston, July, 1900, affirmed, and GARY, J., October, 1900, reversed.

Action for perpetual injunction against trespass by Charles Pringle Alston and Susan Pringle Alston against J. F. Limehouse, Jonas Happy, Sim Leonard, Abner Leonard and A. M. Hills. Heard on Circuit with case of Donaldson *v.* Nesbit. From orders of Judges Gage and Gary, defendants appeal.

*Messrs. Smythe, Lee & Frost* and *Walter Hazard,* for appellant. The former cite: *Are the orders of Judge Gage*

*appealable?* 25 S. C., 42; 29 S. C., 3; 34 S. C., 351; 36 S. C., 562; 43 S. C., 189; 48 S. C., 315; 42 S. C., 209; 51 S. C., 136; 53 S. C., 224; 26 S. C., 320; 27 S. C., 95; 30 S. C., 320; 48 S. C., 565; 51 S. C., 417; 52 S. C., 588; 56 S. C., 90. *Is order of Judge Gary appealable?* Code, 274; 11 S. C., 135; 34 S. C., 172; 17 S. C., 541; 49 S. C., 425; 53 S. C., 130. *Injunction should have been refused on coming in of answer:* 29 N. J. Eq., 304, 431. *Law of injunctions:* 17 S. C., 417; 9 How., 28. *As to plaintiffs' title:* 22 S. C., 84. *State's ownership is to high water mark:* 94 U. S., 394, 336; 22 S. C., 52; 24 S. C., 598; 22 S. C., 492; 42 S. C., 150; Rev. Stat., 1832 to 1846; 21 Stat., 179, 181; 22 Stat., 222; 20 Stat., 525. *Injunction should not be given without bond:* Code, 243; 39 S. C., 430; 19 S. C., 238; 3 Abb., 391; 105 U. S., 437; Rule LXIX. C. C.; 21 How., 428; 27 S. C., 625. *Defendants are entitled to trial by jury, and hence error to refer issues:* 22 S. C., 77; 26 S. C., 610; 28 S. C., 64; 42 S. C., 139; 19 S. C., 289; 23 S. C., 392; 28 S. C., 530; 31 S. C., 262; 25 S. C., 77; 36 S. C., 560; 24 S. C., 39; 42 S. C., 93; 52 S. C., 237; 12 S. C., 108; 17 S. C., 544, 33; 22 S. C., 320; 33 S. C., 400; 17 S. C., 412; 24 S. C., 39; 41 S. C., 195. *Plaintiffs have no exclusive right of fishing:* 13 Ency., 2 ed., 555, 558, 560, 561, 562, 563, 565, 566, 568, 579, 580; 16 Pet., 411.

On motion to postpone hearing of motion to dismiss appeals, same attorneys cite: 33 S. C., 395; 39 S. C., 401; 53 S. C., 373; 39 S. C., 401.

*Messrs. Mitchell & Smith,* contra, cite: *Judge may decide for that purpose alone issues on motion for preliminary injunction:* 37 S. C., 223; 48 S. C., 315. *As to the boundaries of lands abutting on navigable waters:* 42 S. C., 150; 55 S. C., 6; 4 Rich., 68; 5 Rich. Eq., 76; 22 S. C., 50. *Whether plaintiff has title, is issue for jury, and cannot be decided on motion for injunction:* 33 S. C., 184; 37 S. C., 117. *Construction of grant:* 60 N. Y., 72; 91 N. Y., 98; 153 U. S.,

25; 3 Stat., 298; Rev. Stat., 1878, 1879; 22 S. C., 501; 42 S. C., 156. *"Fishing:"* 13 Ency., 2 ed., 555; 51 S. C., 53; 153 U. S., 1; 60 N. Y., 71; 1 Campb., 309; 20 Stat., 1097. *Temporary injunction properly granted:* Code, 240; 10 Ency., 1048, 1055, 1056, 1057; 54 S. C., 430; 29 S. C., 447; 35 S. E. R., 375; 42 S. C., 101; 54 S. C., 457; 51 S. C., 433. *Complaint presents an equitable issue, and order of reference proper:* 29 S. C., 447; 22 S. C., 77; 35 S. C., 41; 53 S. C., 126; 52 S. C., 463. *Is title only to high water mark?* 22 S. C., 50, 492; 24 S. C., 598; 42 S. C., 138; Rev. Stat., 1842; 153 U. S., 1; 22 S. C., 502. *Exclusive rights of fishery may be granted:* 13 Ency., 2 ed., 562; Gray, 437; 60 N. Y., 56; 22 S. C., 50; 42 S. C., 138; Rev. Stat., 1873, 1875. *That no injunction bond was required cannot be raised here:* 35 S. C., 444; 40 S. C., 17. *Issues of equity properly referred:* 5 Rich. Eq., 327. *Order of temporary injunction is not appealable:* 48 S. C., 315; 25 S. C., 41; 34 S. C., 345; 36 S. C., 559; 43 S. C., 187; 49 S. C., 378; 51 S. C., 433; 42 S. C., 101; 54 S. C., 547; 58 S. C., 21; 27 S. C., 415. *Nor is order of reference:* 5 Rich. Eq., 327; 49 S. C., 425; 58 S. C., 459; 55 S. C., 379; Code, 274a; 34 S. C., 169; 39 S. C., 423.

June 22, 1901. The opinion of the Court was delivered by

MR. JUSTICE GARY. The appeals herein are from orders of his Honor, Judge Gage, granting a temporary injunction, and from an order of his Honor, Judge Gary, referring it to the master to take the testimony in the above entitled cause and report the same to the Court. As the questions presented by the exceptions are largely dependent upon the pleadings, it is necessary to set out the complaint, which is as follows:

"First. The plaintiffs are seized in fee simple and are in actual possession of a tract of land in Georgetown County, in the State of South Carolina, on Waccamaw Neck, in what was the old Parish of All Saints, Waccamaw, contain-

36—60

ing about 2,000 acres, butting and bounding north on land of Ward, east on the Atlantic Ocean, south on lands of Donaldson, and west on the Waccamaw River.

"Second. That the said tract of land includes a large area (about 600 acres) of salt marsh, more or less subject to the daily flux and reflux of the tide, and lying between the eastern part of said tract commonly called Dubordieu Island, and the highland of the rest of the tract, which said marsh area is interspersed and intersected by runnels or small creeks and natural drainways, where through the water daily brought in by the tide returns to the ocean.

"Third. That the said salt marsh is the breeding place and habitat of clams and other shellfish, and is also resorted to by wild ducks and other birds, and said creeks and runnels are in places the site of oyster beds and banks, and also the resort of fish. That in and under the original grant from which the title of these plaintiffs is derived, all and singular the entire marsh lands and beds of the creeks were granted and included by direct metes and bounds of the grant; the same running back from the Atlantic Ocean to the Waccamaw River, and including all the marshes and creeks between the two. That in addition thereto, the grant gave in express terms to the grantees the exclusive and sole right and privilege of hunting, fowling and fishing within the limits of the said grant.

"Fourth. That the said land has been owned and in the exclusive possession of the plaintiffs and their ancestors for more than a century, and of the parties through whom they claim since the date of the grant in 1733. That for more than a century the plaintiffs or their ancestors have exercised and maintained the exclusive possession and dominion over all the said marshes, creeks and drainways, according to the nature of the property, and their possession has never been before contested.

"Fifth. That now so it is that certain partes have undertaken to trespass and invade upon plantiffs' said marsh and creeks, and to take and remove the clams and other shellfish

from the beds of the creeks, and also fish and seine and remove the fish from said creeks, and in addition, to habitually trespass upon, shoot, frighten and scare off the game, upon the said described property.

"Sixth. That the said marshes are dependent for their value in great measure for their use for the purpose of maintaining and preserving the game, and for maintaining and preserving the oyster beds and banks, and clams and other shellfish therein, and by fishing in said creeks, and of the continuous trespass thereon by parties, destroys the value thereof.

"Seventh. That certain parties, to wit: the parties above named, as defendants herein, J. F. Limehouse, Jonas Happy, Abner Leonard, Sim Leonard, Oliver Sellers, and A. M. Hills, whose names are as above given, have, as plaintiffs are informed and believe, been the parties who have been engaged in the said trespass and invasion and depredation. That the said parties are, as plaintiffs are informed and believe, and so allege and charge, without financial ability to meet any judgment or execution at law, and the same, if even brought for damages against them, would be valueless, and that proceedings at law would necessitate continuous and incessant and a numerous multiplicity of suits against each successive trespasser for each successive trespass.

"Wherefore, plaintiffs pray judgment that the said parties be permanently enjoined from in anywise trespassing upon said property of plaintiff, and that in the meantime, until the hearing of the case on the merits, a temporary injunction do issue from this honorable Court, restraining and enjoining them from such trespass."

The answer of the defendants to the foregoing complaint, in substance, denies all the material allegations thereof.

On the hearing of the case in this Court, a preliminary question was raised that the Court was without jurisdiction, as the said orders were not appealable. We will first consider whether the orders of his Honor, Judge Gage, were appealable. Those orders are as follows: "These

are two actions for injunctions. They were heard together, are dependent on the same facts, and I will make one order, to stand as the order for each case, just as if separately entitled therefor. The motions before me are for a continuance of the temporary injunctions heretofore granted, until the issues raised by the pleadings have been tried. The motions were heard on complaint and answer, and affidavits submitted by both sides. The argument was elaborate and helpful. The cause is very interesting.

"The plaintiffs claim title to several thousand acres of land in Georgetown County, stretching from Waccamaw River on the west to the Atlantic Ocean on the east. Within the description of the land are certain water-ways, the habitat of clams, oysters, fish, ducks and birds. The defendants are fishermen, follow that craft for a livelihood, and have been accustomed to catch shellfish in the said waterways, and they do so under claim of right, to wit: because the streams are navigable. The plaintiffs vest their title in the beginning on letters patent from Charles II. to the eight Lords Proprietors, 24th March, 1663; a grant from the rest (seven) of the Lords to one of them, John Lord Cateret, 5th December, 1718; a deed of lease and release from Cateret to John Roberts, 18th and 19th February, 1730; a grant from George II. to John Roberts, 13th September, 1736. In the grant last named there is this language, to wit: 'Together with all woods, underwoods, timbers, timber trees, lightwood pitchings, lakes, ponds, fishing waters, water courses, pastures, feedings, marshes, swamps, ways, easements, profits, commodities, advantages, emoluments, hereditaments, and appurtenances, * * * together with the privileges of hunting, hawking, fishing and fowling in and upon the same, &c.'

"The contention of the plaintiffs is this: That the absolute title to the entire area embraced within the boundaries of their grant, is in them, except the beds of such streams as are shown to possess the capability of floating useful commerce, and in those streams they own to low water mark

absolutely; and below that they have the exclusive right of fishing.

"The contention of the defendants is this: That the streams in which they have taken oysters are navigable; that in such streams the plaintiffs have no exclusive title below high water mark, and the plaintiffs are not entitled under the terms of their paper title to the exclusive right to take oysters.

"I think there is no question but that the alleged place of trespass lies within the boundaries of the grant; and there is no question but that plaintiffs have proved a good paper title to the soil, above water, within that area. I do not understand the defendants to contend, by answer, proof or argument, that they have acquired a right by prescription to take oysters from the lands and waters in question.

"The real contest before me was about these issues, to wit: 1. At what particular place did defendants take oysters? 2. Were the waters at those places navigable? 3. Do the plaintiffs' exclusive rights stop at low or high water on navigable streams? 4. What exclusive right of fishing did the words of the aforementioned grant convey to John Roberts, and were the same rights transferred to the plaintiffs? .

"The first two are questions of fact; the last two are questions of law. The verified complaints do not specify in what waterway the oysters were taken, or at what spot on the plaintiffs' land the trespasses were committed; but alleges generally a trespass thereon. At what place the trespass was done, is matter of proof. The verified answers deny entry at every place, except in navigable tide water streams and creeks; and the defendants' affidavits specify the creeks to be those called Jones, Town, Old Man's, and Dubordieu Therefore, the only issue now is, the right of defendants to take oysters in these four creeks. The testimony tending to prove these four waterways navigable is scant, only two of the witnesses swear to facts; they are Cain and Munnerlyn. If the issues were contested, I should

not feel warranted in finding that they were waterways of sufficient depth and width to float useful commerce. But the plaintiffs offer no testimony contra, so I assume the streams above named are navigable.

"It is not contended by the plaintiffs that the aforementioned grant undertook to convey to the grantee the soil underneath a navigable stream. But the plaintiffs do contend that the grantees took exclusive title to the soil down to low water mark; and that the defendants deny. That issue is hardly relevant now, for the proof shows the defendants gathered oysters in the natural growth lands in the beds of the four navigable streams; it does not show that they gathered oysters on that area which lies betwixt high and low tide. Nevertheless, the question has been made, and I shall not shun it. The fact is, on the Georgetown coast, flood tide covers a vast area of land, which at low tide is exposed to view. For convenience, I shall term that area marsh lands. In this country the tides have no relevancy to navigability. It was otherwise in England, whence the common law, and its terminology came. There tide waters and navigable waters were convertible terms. Here, if a watercourse is navigable, it is so because the depth and width of it are sufficient to float useful commerce. If the depth and width of a stream are augmented by a periodical increase of water, called tide, that fact may make the stream navigable at those points in it where it is so in fact, to wit: in its channel; but not navigable where it is not so in fact, to wit: out of the channel in the marshes. The State owns (because it has refused to sell) the beds of navigable streams, not because they are covered with water, tide or otherwise, and not because inhabited by fish; but because they are *ways,* convenient to float useful commerce. There is no greater reason why it should preserve for the public the fish in navigable than in non-navigable streams, or the fish in water than game on the land. 'By the common law, the doctrine of the dominion over, and ownership by the Crown, of lands within the realm under tide waters is not

founded upon the existence of the tide over the lands, but upon the fact that the waters are navigable, tide waters and navigable waters, as already stated, being used as synonymous terms in England.' *Illinois* v. *Illinois,* 146 U. S., 436. The reasonable conclusion, therefore, is that the marsh lands within the plaintiffs' boundaries belong absolutely to the plaintiffs.

"This brings us to the next inquiry, and that is, the construction of the words in the grant from George II. to John Roberts, hereinbefore quoted. The language purports to convey in brief: fishing waters, water courses, feedings, marshes, swamps, easements, profits, advantages, emoluments; together with the privileges of hunting, and hawking and fishing. If the king had the power to make the grant, the plaintiffs' predecessors took the rights for which the plaintiffs now contend. It makes little difference that the subsequent conveyors did not, *in ipsissima verba,* convey the aforementioned rights when they made deeds to the lands; the rights were first conveyed with the land, and a subsequent conveyance of the land carried the rights as well. I have not examined if the king had the power to convey the rights and privileges he undertook to convey to John Roberts on 15th September, 1736. I assume that he did. Of late years, the General Assembly has undertaken to regulate oyster fishing in the 'public waters' of the State, 20 Stats., 1097. That statute devolves on the sinking fund commission the power and duty to make a survey of oyster lands in public waters, and to lease the same in perpetuity. There is a provision in the statute which exempts from its operation those lands occupied by persons under existing laws, and held under grants issued under the laws of the State. The agent of the sinking fund commission swears that the waters in dispute are in effect such waters. If it is true, the terms of the statute and the affidavit of Mr. Gibbes are not conclusive of the question here, but they are relevant to the issue.

"Finally, are the plaintiffs entitled to injunctions until legal issues made by the pleadings have been tried before the

proper tribunals? Issue has been joined, and the action is ripe for trial. The rule is, the party asking for an interlocutory injunction must show: (1) a clear legal right, and (2) well grounded apprehension of immediate danger thereto. I have found the legal right; the affidavits of the defendants show likelihood of immediate injury thereto, if not restrained.

"It is, therefore, ordered, that the injunctions heretofore granted be continued with like force and effect until the further order of the Court. Geo. W. Gage, Circuit Judge. Chester, S. C., 13th July, 1900."

"It having been brought to the attention of the Court that no restraining order has heretofore been issued by this Court, but the same was heard upon a rule to show cause why a temporary injunction should not be issued, and, therefore, that there was no injunction pending at the date of the filing of the order hereinbefore made to be continued. Now, in order to carry out the decision herein filed, it is ordered, that the defendants, J. F. Limehouse, Jonas Happy, Sim Leonard, Abner Leonard and A. M. Hills and each of them, the servants, agents, employees and attorneys of them and each of them, be and they are hereby enjoined and restrained from in anywise hunting, fishing, fowling or otherwise trespassing upon the lands and premises of the plaintiffs described in the complaint herein, until this case be heard and decided on the merits, or until further order of the Court. Geo. W. Gage, Circuit Judge. 28th July, 1900."

On a motion for a temporary order of injunction, the Circuit Judge, in considering the issues raised by the pleadings, should indicate that their consideration is solely for the purpose of determining whether the plaintiff has a *prima facie* right to an order of injunction. His order should not purport to dispose of the issues upon the merits, as was done in this case. The language of Judge Gage cannot be construed as a finding upon the facts in such a manner as to affect the merits of the case. It must be regarded as used for the purpose of showing that he was justified in granting the tempo-

rary order of injunction, and not as in any manner affecting the other question in issue. No fact decided upon such motion is concluded thereby, and when the other issues are brought to trial, they are to be determined without reference to said orders. In the case of *R. R. Co.* v. *Terminal Co.*, 48 S. C., 315, the Court says: "The order was necessarily made without prejudice to the rights of the parties, upon the final hearing of the case; as much so, as if the words 'without prejudice, &c.,' had been inserted in the order. The Circuit Judge did not have the power, on the hearing of said motion, even if he had so desired, to decide the case upon its merits. The effect of said order was the same as if the Circuit Judge had stated in the order that it was only to remain in force until a decision could be made upon the merits"—citing *Garlington* v. *Copeland,* 25 S. C., 41, and *Sease* v. *Dobson,* 34 S. C., 345.

Ordinarily, an order granting a temporary injunction is not appealable, and under the foregoing construction of said orders, we see no reason why this case should not fall within the operation of the general rule. Having reached the conclusion that the said orders are not appealable, the other exceptions to these orders will not be considered.

We will next consider whether the order of Judge Gary was appealable. That order is as follows: "A motion has been made in both of these causes for an order of reference; and after hearing counsel, and it appearing that the applications in both cases depend on the same questions, and have been heard together, and it being agreed that one order shall be made to be entered in both causes. Now, therefore, it is ordered, that it be referred to F. L. Wilcox, Esq., to take the testimony in both of the above entitled causes, and report the same to the Court." Both equitable and legal issues were raised by the pleadings. The equitable issues were triable by the Court in the exercise of its chancery powers, while the legal issues were triable by jury. The right to a perpetual injunction was dependent

upon the result of the legal issues. The parties, therefore, had the right to demand that the legal issues first be tried. One of the incidents of this mode of trial is the right to have the testimony taken before the jury, and not by a referee. It has been suggested that the Circuit Judge had a right to order a referee to take the testimony preparatory to a trial of the equitable issues. The answer to this is that there is no such limitation in the order; on the contrary, it is in general terms to take all the testimony in the case—not only that pertaining to the equitable issues, but also that pertaining to the legal issues. This latter could not be done without depriving the defendants of a substantial right, and this rendered the order appealable. Besides, the order is premature and may become wholly unnecessary. For, as has been said, if the determination of the legal issues be in favor of the plaintiffs, then, in all probability, no further testimony will be needed to dispose of the equitable issues. If, on the other hand, the determination of the legal issues be in favor of the defendants, that will effectually dispose of the equitable issues. This order was, therefore, not only appealable but for the foregoing reasons erroneous.

It is the judgment of this Court, that the appeals from the orders of Judge Gage be dismissed, and that the order of Judge Gary be reversed.