7877

ATLANTIC COAST LINE R. R. CO. v. SEABOARD AIR LINE RAILWAY.

1. WAIVER.—CONDEMNATION under the statute does not determine the *right* to compensation, but the *amount only* and the participation of landlord in selecting a condemnation jury is not a waiver of the decision of a proper tribunal on the disputed question of right, where steps are taken at once to protect his rights.

2. RES JUDICATA—IBID.—The order of the Circuit Court refusing to enjoin condemnation *pendente lite,* nor the order of this Court

refusing to supersede such order can be regarded as an adjudication of the right to condemnation.

3. INJUNCTION—RAILROADS.—Where the railroad commission has granted one road the right to cross the tracks of another upon certain conditions, it is error to enjoin the road to be crossed from interfering with such crossing until all conditions imposed by the commission have been met and to restrain it from protecting its rights to the possession of its tract by resort to the courts, and the road desiring to make the crossing is ordered to restore the original status.

4. AN INJUNCTION should only preserve the status at its date and should not undertake to take property from the possession of one and put it in the possession of another, nor to deprive it of the right to protect its possession.

Before WATTS, J., Chesterfield, December, 1910. Reversed.

Action by the Atlantic Coast Line R. R. Co. against the Seaboard Air Line Ry. Defendant appeals.

*Messrs. Lyles & Lyles* and *W. F. Stevenson,* for appellant, cite: *Error to give relief beyond scope of rule:* 14 Ency. 119-20; 19 S. C. 286; 38 S. C. 464. *Plaintiff's right to condemn had not been adjudicated:* 38 S. C. 308; 67 S. C. 84; 51 S. C. 164; 53 S. C. 118, 198; 77 S. C. 416; 87 S. C. 270. *Private nuisance should not have been enjoined before the determination of its existence by law:* 17 S. C. 411; 21 S. C. 234; 24 S. C. 39; 42 S. C. 93; 63 S. C. 38; 19 S. C. 293. *Legal proceedings should not be enjoined:* 22 Cyc. 788; 1 Joyce on Inj. 26, secs. 576a, 577; 1 High on Inj., sec. 64. *Order pendente lite should not deprive party of possession:* 27 S. C. 415; 4 S. C. 402; 10 Ency. P. & P. 878; 22 Cyc. 740; 1 Joyce on Inj., secs. 109a, 112; 1 High on Inj., secs. 4, 5; 52 N. W. 687; 53 Pa. St. 224; 36 L. R. A. 566; 2 N. W. 16; 58 Fed. 50. *Plaintiff should have been required to restore status:* 9 S. E. 783; 1 High. on Inj., sec. 5a; 10 Ency. P. & P. 1104; 25 N. E.

588; 104 Ind. 548; 37 At. 90. *The Railroad Commission
has power to adjudicate the right to cross:* 34 At. 619; 170
U. S. 57; 151 U. S. 556; 167 U. S. 88; Cool. Con. Lim.
823, 842; 113 U. S. 27; 129 U. S. 26; 136 U. S. 436; 33
Kan. 176; 27 L. R. A. 710.

*Messrs. P. A. Willcox* and *W. P. Pollock,* contra: *One
road has the right to cross the tracks of another:* 1 S. C. 46;
36 S. C. 125. *Judge Watts had authority to enjoin the act
of appellant:* Code of Proc. 240. *The Railroad Commission
has authority to grant the right to cross:* Code 1902, 2179,
2191, 2187, 2195, 2194.

April 25, 1911. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. This appeal is from an order
of injunction *pendente lite* granted by Judge Watts on
December 30, 1910, upon return of defendant, to a rule to
show cause with temporary restraining order dated December 22, 1910.

The rule directed defendant to show cause why it "should
not be restrained and enjoined from obstructing in any
manner and from maintaining its sidetrack over and across
the right of way of plaintiff on Front street in the town of
Cheraw, and why it should not be enjoined and restrained
from instituting any legal steps whereby the plaintiff would
be hindered or delayed in the use of its right of way."

After stating the corporate capacity of the plaintiff,
defendant and the town of Cheraw, the complaint alleged
that plaintiff was granted a right to build a spur track along
Front street, by ordinances of the town of Cheraw adopted
August 1 and December 16, 1910, followed by a deed conveying said right of way; that on November 12, 1910, the
defendant wantonly trespassed upon and obstructed said
right of way by the construction of a railroad track across
the same; that plaintiff instituted condemnation proceedings

to condemn the right of way across the track and right of way of defendant where the same crosses Front street in Cheraw, and that such proceedings were completed on November 12, 1910, and that the jury of condemnation awarded $25.00 damages against plaintiff for such right of way, which sum was deposited with the clerk of court at Chesterfield and that no appeal has been taken from the finding in such proceeding; that on November 14, 1910, after the completion of the condemnation and deposit of the award, the defendant completed the construction of its sidetrack across said right of way of plaintiff without plaintiff's consent and thereby rendering said right of way useless and unfit for the purpose for which it was granted; that defendant has heretofore by actions at law or equity delayed and hindered plaintiff in the use of its right of way and threatens to continue to hinder, delay and defeat plaintiff in such use, both physically and by legal proceedings; that by reason of the foregoing plaintiff has been damaged $10,000 and unless defendant be restrained from continuing said interference and obstruction irreparable damage will be done to plaintiff.

On December 26, 1910, the defendant intervened by petition alleging that it owned a right of way across Front street for a double track and was exercising its right to maintain the sidetrack in question for the service of its customers and the public, that defendant in conjunction with the town of Cheraw had trespassed upon plaintiff's right of way and tracks at Front street, had torn up the sidetrack, overpowered defendant's agents with an armed force, taken charge of defendant's engine and have attempted to cut defendant's main track and place in a crossing by violence, that the right of plaintiff to make such crossing is in litigation in another case (*Seaboard Air Line Railway* v. *Atlantic Coast Line Railway,* now pending in this Court, and heard along with this case); that defendant is desirous of having such right finally adjudicated as speedily as possible; that under the permission to make such crossing granted by the

Railroad Commission, plaintiffs were required to put in an interlocking switch system, and that no provision for such interlocking switch system had been made, and that it will take a great while for the same to be established, and that plaintiffs are endeavoring to place the crossing by force and violence on the main line of defendant, without the safeguards under which they were permitted by the Railroad Commission to place same, etc.

Upon this petition Judge Watts, by his order dated December 26, 1910, required the Atlantic Coast Line Railroad Co. and the town of Cheraw to show cause on December 30, 1910, why they should not be restrained from interferring with the track of the Seaboard Air Line Railway and the crossing as now contemplated and from interferring with the defendant's possession of its property in any way, and in the meantime they be restrained from such interference it being the intention of the order to maintain the status until the hearing set for December 30, 1910.

On December 30, 1910, defendant made its return whereby it first demurred to the complaint upon the ground that it did not state facts sufficient on three grounds stated, and then as to the allegations of the complaint it in substance denied that plaintiff had acquired any right of way over right of way and tracks of defendant across Front street and alleged that defendant had the right of way of width necessary for two railroad tracks across Front street which was acquired by the Palmetto Railroad Co. by virtue of an act of the General Assembly of 1882 and an ordinance and deed of the town of Cheraw of 1886, and that defendant had acquired the right of the Palmetto Railroad Co.; that the main line of defendant was built across Front street in 1887 and the said sidetrack was built on the 12th and 14th of November, 1910, by virtue of this authority for the purposes of accomplishing its business and not to hinder or defeat the right of way claimed by plaintiff; that since the dates mentioned, the Palmetto Railroad Co. and defendant

as successor had been in actual and peaceable possession of this right of way main line and sidetrack.

The return set forth the two orders of the Railroad Com-·mission of date December 22d and December 28th, passed pursuant to section 2179 of the Code of Laws, and giving the preliminary approval of the commission to a crossing by the Coast Line at this point, under very minute and substantial conditions, to wit, that the crossing was to be protected with an interlocking switch and that all preliminary plans for the crossing and interlocking switch were to be submitted before the work was attempted.

The return then set forth that on the 24th day of December, 1910, the plaintiff, without having in anywise complied with the order of the commission, in that it had furnished and the commission had approved no plans for the crossing and interlocking switch, and had made no arrangements for the installation of an interlocking switch, and, in utter violation of the order of Judge Watts, of December 23d, intended to maintain the status, had entered upon the right of way of defendant at Front street and torn up and destroyed the sidetrack and placed obstructions between the rails of the main line, taken forcible possession of defendant's engines and cars on the main line, and illegally arrested its employees in charge thereof.

The return and affidavits then further allege that the proposed crossing was not only a serious menace to the safety of all persons and property moving over the Seaboard, but that it would be a serious and substantial hindrance to the Seaboard in the use and enjoyment of its right of way, and that, therefore, under section 2195 of the Code, it was such a right of way as could not be condemned by plaintiff.

By way of reply and return plaintiff contended that the alleged nuisance was placed by defendant on Front street after plaintiff acquired from the Railroad Commission the right to cross said street with its track, after plaintiff had

condemned the crossing, after plaintiff had received per-
mission from the town of Cheraw to use said street, and
after Judge DeVore, in the action instituted by defendant
against plaintiff, had refused the injunction sought by
defendant against plaintiff; that the right of plaintiff to
cross the track of defendant was complete after the per-
mission of the Railroad Commission, the condemnation
proceedings, the refusal of injunction by Judge DeVore,
and of the Supreme Court to supersede the order of Judge
DeVore; that the right of defendant to construct a "double
track" across Front street did not warrant the building of
the obstructive sidetrack; that all questions of danger and
inconvenience to the defendant by the proposed crossing
were fully passed upon and decided; that early on the morn-
ing of the 24th day of November the defendant unlawfully
carried away the crossing frog which plaintiff designed to
place in the crossing, and that, in consequence, plaintiff
made a temporary crossing on December 24th; that plaintiff
never had intention to install a crossing at Front street with-
out an interlocking plant and the supervision of the Railroad
Commission; that after a hearing before the Railroad Com-
mission, on December 28th, the commission refused to
reopen the question of the permission to make the crossing
and reaffirmed its permission granted on September 22,
1910, etc.

The following order was granted by Judge Watts:

"On hearing pleadings, return and affidavits herein on
rule to show cause why injunction should not be granted,
and after argument of counsel, and it appearing that the
plaintiff obtained an order from resident Circuit Judge and
condemned the crossing referred to in the pleadings herein
according to law, and obtained consent of the Railroad
Commission of this State on two separate occasions, that
the defendant attempted to obtain an injunction and
restraining order from his Honor, Judge DeVore, presiding
in this circuit, which was refused, and applied for an order

in the Supreme Court staying all proceedings until that appeal could be heard, which was refused.

"It appears to me that I have no authority to review these orders, and that plaintiffs are entitled to put in the crossing under the terms and conditions as allowed by the Railroad Commission.

"It is, therefore, ordered, declared and adjudged that the temporary restraining order granted herein be continued until the final hearing of this case herein, and that plaintiff enter into bond in the sum of two hundred and fifty dollars, before and to be approved by the clerk of court of this county, within ten days, with surety; the said bond to be the usual injunction bond; that the plaintiff be allowed to put in its crossing over the right of way, sidetracks and main line of the defendant's railroad in accordance with the permission and instructions of the Railroad Commission in allowing the same; that the defendant, its agents, employees and servants, be enjoined and restrained from in any manner interfering with plaintiff doing the same. It further appearing to my satisfaction that there had been considerable agitation, irritation, bad blood and excitement over this matter, between the parties to this suit, it is ordered that D. P. Douglass, as sheriff of Chesterfield county, see that this order is executed and enforced. R. C. Watts, Judge of Fourth Circuit.

"December 30, 1910."

The plaintiff has appealed from this order upon exceptions alleging error:

(1) In enjoining an alleged nuisance which had not been established at law.

(2) In restraining defendant in the use and possession of its property, pending the determination of plaintiff's rights therein.

(3) In restraining defendant from instituting any legal steps for the protection of its rights in the premises.

(4) In going beyond the scope of the rule to show cause and relief demanded in the complaint, which related to the sidetrack, by undertaking to deal with defendant's main line.

(5) In holding that he had no authority to review the proceedings and orders referred to in his order, and that because of them plaintiff had the right to put in the crossing; whereas, he should have held that there has been no adjudication of any right in plaintiff to make such crossing.

(6) In not enjoining plaintiff from interfering with the right of way, sidetrack and main line of defendant, and in not protecting defendant in the possession thereof. pending the final determination of the right claimed by plaintiff.

(7) In failing and refusing to order plaintiff to replace the sidetrack and remove the obstruction placed on defendant's right of way and main line and restore the status as it existed on December 22, 1910, when the restraining order was issued, which tied the hands of defendant.

(8) In forcibly taking the property of defendant from its possession and placing same in the possession of plaintiff, through the sheriff, in the absence of any adjudication of plaintiff's right.

After the filing of the appeal return in this Court the defendant filed a petition asking that plaintiff be restrained from further proceedings under the order of Judge Watts, pending the appeal, and on the          day of January, 1911, a rule to show cause, with restraining order, was issued by this Court.

The petition, among other things, shows that since the order of Judge Watts, appealed in this case, the Atlantic Coast Line Railroad Company applied to the Railroad Commission, at a meeting on January 2, 1911, to approve its plans for said crossing and for the interlocking switch contemplated by the order of the commission; that the commission took the same under consideration, and by an order dated January 6, 1911, reached the conclusion that the grade

crossing at Front street would be dangerous to the general public and that it should not be allowed, but gave the Atlantic Coast Line Railroad Company the option of crossing at grade at Second street, upon certain conditions, or crossing overhead at Front street; that, notwithstanding this rescission of the former orders of the commission, the Atlantic Coast Line Railroad Company has entered upon petitioner's right of way under the protection of the sheriff and has proceeded to tear up petitioner's main line track at Front street.

The action of the Railroad Commission was telegraphed to the officials of the Atlantic Coast Line Railroad Company on the morning of January 7, 1911, and was received by them, it is stated, after the placing of the crossing frog, but before the installation of the interlocking switch.

This Court, by its order dated January 7, 1911, supplemental to its former restraining order, and to be effective until the further order of the Court, required:

"That the Seaboard Air Line Railway do not interfere with the switch or crossing as now constructed across its right of way and track at Front street, in the town of Cheraw, S. C., by the Atlantic Coast Line Company.

"That the Atlantic Coast Line Railway Company do refrain from crossing or in anywise using the said track or switch constructed by them, and from entering at said point on the right of way of the Seaboard Air Line Railway Company."

We have not undertaken to give in detail all the contents of the mass of papers and affidavits presented in this case; and we have laid no stress on angry and belligerent conduct of the parties in the assertion of their supposed rights, as the decision of this case will not be influenced or controlled by such matters.

After most careful consideration, we have reached the conclusion that the order of Judge Watts was erroneous.

The fundamental error was in assuming that the right of plaintiff to make the crossing in question had been determined.

Many cases in this State, following *Railway Co.* v. *Riddlehuber,* 38 S. C. 308, 17 S. E. 24, have determined that the condemnation statutes furnish no means for determining the *right* to compensation, and that the inquiry thereunder is limited to ascertaining the *amount* of compensation. It follows that the judgment in condemnation could not determine the question of plaintiff's right to make the crossing. It must also follow that the participation of defendant in the selection of the jury in the condemnation proceedings could not be construed as a waiver of the decision of a proper tribunal on the disputed question of right, because the object of the proceedings was not to try the question of right, and consent even could not confer jurisdiction over a subject matter not conferred by the statute.

It may be that if one denying the right of condemnation should not take timely action to invoke the proper tribunal, a Court might hold that there was a waiver of the question of disputed right; but in this case it appears that plaintiff served notice of intention to condemn on October 3, 1910, and on October 29, 1910, defendant served notice of refusal of consent; that on November 4, 1910, plaintiff secured an *ex parte* order from Judge Watts directing the empanelling of a jury of condemnation, which jury was drawn on the 7th and summoned to appear on the 12th; that on Saturday, November 5th, defendant procured an order to show cause why plaintiff should not be enjoined *pendente lite* from proceeding with the condemnation proceedings, with a temporary restraining order, which were served on Monday, November 7th, the day on which the jury were drawn. At the hearing, on November 11th, Judge DeVore refused injunction *pendente lite.* The jury met on November 12th, over the protest of defendant, and proceeded to make the assessment. As stated, appeal is pending from the order

of Judge DeVore refusing injunction.   We cannot see any-
thing in these proceedings from which an inference could
be made that defendant had waived or abandoned its dispute
as to plaintiff's right of condemnation.

Nor can it be said that the order of Judge DeVore, refus-
ing injunction *pendente lite,* adjudicated any right in plain-
tiff, as such an order does not dispose of the issue on the
merits.   *Alston* v. *Limehouse,* 60 S. C. 559, 39 S.
E. 188; *Wright* v. *Columbia,* 77 S. C. 416, 57 S. E.
1096.   Likewise the order of this Court, refusing
order of *supersedeas,* in the appeal from order of Judge
DeVore, could not be regarded as affecting the merits any
more than the order of Judge DeVore did.

It is very clear also that orders of the Railroad Commis-
sion, of September 23d and December 28th, gave plaintiff
no absolute right to make the crossing.   The order of Sep-
tember 22d declared: "After due consideration the
consent of this commission is hereby given to the
Atlantic Coast Line Railroad Company to cross the
main line track of the Seaboard Air Line Railway on Front
street, in the town of Cheraw, S. C., with its track at grade:
*Provided,* That said crossing be protected with an interlock-
ing switch; said crossing and interlocking switch to be sub-
ject to the approval of this commission."

The order of December 28th provided:

"That the permission granted to the Atlantic Coast Line
Railroad Company to cross track of Seaboard Air Line
Company, on September 22, 1910, contemplated the fur-
nishing of this commission all preliminary plans of the
interlocking switch and crossing, and the proper erection of
the same subject to the approval of this commission.

"That all necessary material for the completion of the
interlocking switch and crossing as ordered be assembled
before any work on same is begun, and that the work of
erection be carried on to completion simultaneously.

"That no engine or train be operated over said crossing until the same has been inspected by the official engineer and accepted by this commission."

No plans of an interlocking switch crossing were ever submitted to the Railroad Commission until January 2, 1911.

Hence any attempt to put in the crossing previous to January 2, 1911, was a violation of the orders of the commission, and, inasmuch as the commission did not approve the plans submitted on January 2, 1911, but disapproved them, the attempt to put in the crossing thereafter was unauthorized by the commission.

Whether the Railroad Commission had authority under the statute to revoke its former consent to the crossing upon condition, either with or without notice to the plaintiff, is not necessarily involved, and, as the Commission is not a party to these proceedings, we will not undertake to adjudge that matter. It is sufficient for the purposes of this case to state that no authority from the Railroad Commission to make the crossing at the date of Judge Watts' order of injunction existed, for want of compliance with the conditions precedent upon which the alleged consent was based.

There being no adjudicated right of plaintiff to the crossing, and the defendant being in possession of its right of way and tracks to be affected thereby, the effect of the order appealed was to disturb defendant in its possession pending the litigation, contrary to the rule that the object of a preliminary injuncton is to preserve the status until plaintiff's right is established.

*Pelzer* v. *Hughes*, 27 S. C. 415, 3 S. E. 791. The order not only failed to preserve the status existing on December 22, 1910, when the preliminary restraining order was granted, though the Court was urged by defendant in its intervening petition so to do, but authorized plaintiff to invade defendant's possession and tied defendant's hands.

even against taking legal proceedings to protect its possession.

We do not deem it important or necessary to consider all the exceptions in detail, as the foregoing considerations are sufficient to justify reversal of the order under consideration. We regard it also proper to provide for the restoration of the status as it existed on December 22, 1910, when plaintiff secured the restraining order against defendant, as it was inequitable to leave plaintiff free to disturb the status after tying defendant's hands. 1 High on Inj., 4 Ed., sec. 5a; 10 Eng. Pl. & Pr. 1104; *Railway Co.* v. *Taylor,* 25 N. E. 598.

The judgment of the Circuit Court is reversed, and plaintiff is hereby ordered forthwith to restore the status as it existed on December 22, 1910.