# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Marshall Griffin, Respondent,

v.

Tony Giovino, Carter Tackett, Richard Aquino, Bill West, and Shoreham Towers Homeowners Association, Appellants.

Appellate Case No. 2023-000451

———

Appeal From Horry County
William H. Seals, Jr., Circuit Court Judge

———

Opinion No. 6117
Heard December 3, 2024 – Filed July 16, 2025

———

## AFFIRMED

———

Henrietta U. Golding, of Burr & Forman LLP, of Myrtle Beach, for Appellants.

John Martin Grantland and Crawford Alan Krebs, of Murphy & Grantland, PA, of Columbia; and Thomas Casey Brittain, of The Brittain Law Firm, P.A., of Myrtle Beach for Respondent.

———

**KONDUROS, J.:** In this property dispute, respondent, Marshall Griffin, sued Tony Giovino, Carter Tackett, Richard Aquino, Bill West, and Shoreham Towers Homeowners Association (the Association; collectively, Appellants) for several causes of action related to Appellants' efforts to restrict Griffin's exclusive use of Shoreham Tower's (Shoreham) "roof terrace." On appeal, Appellants argue the

circuit court erred by: (1) allowing Griffin to reference a temporary restraining order (TRO) against Appellants; (2) submitting the issue of whether the roof terrace, tenth floor elevator lobby, and planters were common elements to the jury; (3) allowing Griffin to amend his complaint to include a cause of action for acquiescence; (4) finding evidence of damages; (5) submitting punitive damages to the jury; (6) not joining all dwelling owners as defendants; (7) permitting the testimony of Henry Beckham; (8) not listing each cause of action in the verdict form; (9) permitting Griffin to refer to the roof terrace as a balcony; and (10) denying Appellants' motion for directed verdict and judgment notwithstanding the verdict (JNOV) on the following claims: a) breach of contract, b) breach of contract accompanied by fraudulent act claim, c) conversion, d) civil conspiracy, e) acquiescence, and f) failing to find the individual defendants immune from these claims. We affirm.

**FACTS/PROCEDURAL HISTORY**

Shoreham is a horizontal property regime governed by the Association. Members of the Association are periodically elected to serve on its governing body (the Board), of which Griffin was a member when the events giving rise to this case occurred.

Shoreham consists of ten floors, and the tenth floor, "the rooftop penthouse" (the Unit) is surrounded by a roof terrace. Griffin and his wife, who is not a party, are the owners of the Unit, which has been either owned or occupied by Griffin or his uncle since 1983. Griffin acquired the Unit from his uncle, one of Shoreham's primary developers, in 1995. The Unit's exterior walls are either solid glass walls or sliding glass doors, including the bedroom walls, which overlook the terrace. The roof terrace has a railing on one of its edges, made to overlook the ocean. Griffin installed Turtle Tile[1] on the roof terrace, furnished the terrace, and planted shrubs in the roof terrace's planters. Griffin testified the Turtle Tile was worth $20,000 at the time of installation.

Appellant Aquino sent an email to the Board regarding concerns over Griffin's exclusive use of the roof terrace and that it may be a common element. In response, the Board requested that Griffin address the concerns raised in Aquino's email. When Griffin did not, the Board proceeded to make its determination as to

---

[1] Turtle Tile is a brand of interlocking, cushion-style floor tiles and ramps made from recycled plastic.

whether the terrace was a common element and therefore open to all the residents and their guests.

After touring the roof terrace, the Board enlisted legal counsel (Counsel) to provide an opinion on whether the roof terrace was a common element. Counsel advised the Board that the roof terrace was a common element and recommended the Board establish rules and regulations. The Board held a telephone conference with Counsel to discuss proposed rules and regulations for the roof terrace. Griffin was excluded from the call. Thereafter, the Board held a meeting to discuss the proposed rules and regulations for the roof terrace. Specifically, West, Tackett, and Giovino met with Counsel. The parties dispute whether Griffin was excluded from this meeting or failed to participate, but Appellants admit Griffin was not included on any correspondence with Counsel.

Once Counsel approved the rules and regulations (the Rules), the Board began implementing the Rules for the roof terrace.[2] By this time Griffin had obtained his own legal counsel and proposed alternative rules to the Board stating the roof terrace was to be exclusively used by Griffin or his guests. Griffin's rules were rejected by the Board and he filed suit against the Association and his fellow board members alleging breach of contract, breach of contract accompanied by fraudulent act, unjust enrichment/quantum meruit, conversion, and civil conspiracy.

Following the filing of the lawsuit, the Association hired a safety inspector to come and give a report on the roof terrace. The safety inspector visited no other areas or units of Shoreham, and the Unit was the sole place of inspection. Following the inspection, Griffin received a letter from the Association stating that he needed to remove all of his furniture from the roof terrace and his shrubs from the planters before the end of May or they would be removed, stored, and eventually disposed of at his expense. Griffin was informed the Rules required a six-foot setback from his railing, despite it being the same height as the railings for every other balcony at Shoreham. The Association removed Griffin's furniture when he failed to do so by the May deadline.[3] During this same period, the Board approved repairs for Shoreham's roof. Griffin removed his Turtle Tile and stacked it to the side so that

---

[2] In addition to regulating the roof terrace regarding usage and improvements, the Rules included a limitation on the number of occupants the Unit could have at one time – something it did not do for any other unit within Shoreham.

[3] As the end of May coincided with the start of peak rental season according to Griffin, he alleges this resulted in numerous complaints from renters.

it could be re-laid after completion of the repairs. However, the Board instructed the roofing contractors to remove the Turtle Tile. The tile was stored at the roofing contractor's facility. The Board instructed Griffin that he could pick up the tile, but he was not allowed to reinstall it.

In response to the removal of his furniture and the Turtle Tile, Griffin filed a motion for a TRO, which the circuit court denied due to the lack of an affidavit or verified complaint. Griffin filed a subsequent motion for a TRO and the court issued a temporary injunction. The injunction required Appellants to return Griffin's furniture and gave Griffin exclusive use of the roof terrace; however, Griffin's Turtle Tile was never returned.

Six days prior to the start of trial, Griffin filed a motion to amend his complaint to add causes of action for adverse possession, declaratory judgment, and acquiescence. Before the trial began, the circuit court heard motions in limine and Griffin's motion to amend. The circuit court waited to see the evidence before ruling on Griffin's motion to amend. Ultimately, Griffin dismissed his unjust enrichment claim, and his claims for adverse possession and declaratory judgment were not accepted by the circuit court. Accordingly, the causes of action for breach of contract, breach of contract accompanied by a fraudulent act, conversion, civil conspiracy, and acquiescence were submitted to the jury. Griffin's civil conspiracy claim was the only cause of action found applicable to the individual appellants, with all other causes of action applying to the Association.

The jury returned a verdict finding that the roof terrace, tenth-floor elevator lobby, and planters were not common elements. The jury also found against both the Association and the individual appellants for civil conspiracy, finding that the individual appellants acted willfully and wantonly. The jury awarded Griffin $20,000.00 in actual damages and $200,000.00 in punitive damages.

The jury then completed a special verdict form, dividing the punitive damages among the individual Appellants as follows: 67% against Aquino; 11% against Giovino; 11% against West; and 11% against Tackett. After evaluating the *Gamble*[4] factors, the circuit court reduced the punitive damage award to $160,000.00. At the close of Griffin's case and at the close of all evidence, Appellants made motions for directed verdict, which the circuit court denied. Following the trial, Appellants filed a motion for JNOV, motion for a new trial nisi

---

[4] *Gamble v. Stevenson,* 305 S.C. 104, 406 S.E.2d 350 (1991).

remittitur, and motion for new trial absolute. The circuit court denied the motions and this appeal followed.

## LAW/ANALYSIS

## I. TRO Reference

Appellants argue the thirty-five references to the TRO before the jury were irrelevant and inherently prejudicial. They maintain permitting references to the TRO was an error of law because the references were minimally probative and highly prejudicial. We disagree.

"The trial court has broad discretion in the admission or rejection of evidence and will not be overturned unless it abuses that discretion." *Davis v. Traylor*, 340 S.C. 150, 157, 530 S.E.2d 385, 388 (Ct. App. 2000). "The trial court's ruling on the admission of evidence will not be disturbed on appeal absent an abuse of discretion amounting to an error of law." *Hawkins v. Pathology Assocs. of Greenville, P.A.*, 330 S.C. 92, 108, 498 S.E.2d 395, 404 (Ct. App. 1998). "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support." *Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 26, 609 S.E.2d 506, 509 (2005), *overruled on other grounds by State v. Wallace*, 440 S.C. 537, 892 S.E.2d 310 (2023). "To warrant reversal based on the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, i.e., that there is a reasonable probability the jury's verdict was influenced by the challenged evidence or the lack thereof." *Id.*

As a general rule, "[a]ll relevant evidence is admissible." Rule 402, SCRE. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *State v. Collins*, 409 S.C. 524, 534, 763 S.E.2d 22, 27 (2014) (quoting Rule 401, SCRE). "Evidence is relevant and admissible if it tends to establish or make more or less probable some matter in issue." *Hoeffner v. The Citadel*, 311 S.C. 361, 365, 429 S.E.2d 190, 192 (1993).

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Rule 403, SCRE. "Unfair prejudice means an undue tendency to suggest a decision on an improper basis." *Johnson v. Horry Cnty. Solid Waste Auth.*, 389 S.C. 528, 534, 698 S.E.2d 835, 838 (Ct. App. 2010)

(quoting *State v. Owens*, 346 S.C. 637, 666, 552 S.E.2d 745, 760 (2001), *overruled on other grounds by State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005)). "A trial [court's] decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances." *Id.* (quoting *State v. Adams*, 354 S.C. 361, 378, 580 S.E.2d 785, 794 (Ct. App. 2003)).

"The purpose of an injunction is to preserve the status quo and prevent possible irreparable injury to a party pending litigation." *AJG Holdings, LLC v. Dunn*, 382 S.C. 43, 51, 674 S.E.2d 505, 509 (Ct. App. 2009). It is well settled in South Carolina that "[a] temporary injunction is made without prejudice to the rights of either party pending a hearing on the merits, and when other issues are brought to trial, they are determined without reference to the temporary injunction." *Helsel v. City of N. Myrtle Beach*, 307 S.C. 29, 32, 413 S.E.2d 824, 826 (1992) (emphasis added).

> It is hard for this court to determine an instance where admission of a preliminary injunction order into the trial record would not be highly prejudicial. . . . We believe admitting this order had a high possibility of influencing the jury due to its numerous findings of fact and statements concluding defendants' liability for the alleged charges.

*Allegro, Inc. v. Scully*, 409 S.C. 392, 409, 762 S.E.2d 54, 63 (Ct. App. 2014), *reversed on other grounds by Allegro, Inc. v. Scully*, 418 S.C. 24, 35, 791 S.E.2d 140, 146 (2016), *abrogated by Hall v. UBS Fin. Servs. Inc.*, 435 S.C. 75, 866 S.E.2d 337 (2021).

However, we conclude "without *reference* to the temporary injunction," does not mean that the TRO may not be referenced, but that the decision on the merits may not be based on the fact a TRO was issued or any specific findings in the TRO itself. *See Alstonse v. Limehouse*, 60 S.C. 559, 569, 39 S.E. 188, 191 (1901) (recognizing the findings in an order for temporary injunction addressed the requirements for issuing such an order and not the ultimate merits of the matter). We distinguish *Allegro* from the present case. In *Allegro* the TRO itself was admitted into the record as an exhibit. *See Allegro*, 409 S.C. at 408-09, 762 S.E.2d at 63 (explaining the language that was used in the TRO that was admitted into evidence). The court found that admitting this *order* had a high possibility of influencing the jury due to its numerous findings of fact and statements concluding defendants' liability for the alleged charges. *See id.* at 409, 762 S.E.2d at 63.

Here, the TRO was never admitted or shown to the jury; it was only referenced in the context of the status of Griffin's property, namely the patio furniture, Turtle Tiles, and plants within the planter boxes.  We find each reference to the TRO was relevant and its probative value was not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Rule 403, SCRE.  Nor do any of the references include findings of fact or conclusions about liability.  Rather, the references to the TRO were to help establish the timeline, inform the jury on the current state of the property, or support the elements of Griffin's claims.

Specific to Griffin's conversion claim, Appellants argue "[t]here is nothing—and [Griffin] cites to no law supporting the notion—that requires a claimant must prove what happens to his property after it has been allegedly converted."  They contend this argument supports that Griffin only referenced the TRO as "evidence of Appellants' alleged wrongdoing—which certainly flies in the face of this State's precedent to not invade the province of the jury and its ability to make determinations of fact and whether to find defendants liable for the claims against them."  We disagree.  Though establishing what happened to the property after it was converted is not an element of conversion, it does not mean that it is not relevant.  The TRO was factually relevant to the current state of the allegedly converted property.  Further, the fact Griffin pursued a TRO supports his conversion claim because he argues the TRO was necessary to protect his property and his use of the Unit, which included providing chairs to his guests who rented the Unit.  Therefore, we conclude the circuit court did not err.

## II.  Submitting the Common Elements Issue to the Jury

Appellants contend the master deed, Exhibit A[5], the building plans, and the definitions in the Horizontal Property Act[6] unambiguously define the roof terrace, the tenth-floor elevator lobby, and the rooftop planters as common elements.  They assert Griffin did not contest that the rooftop planters were common elements at trial but that the circuit court still submitted the question to the jury who erroneously found the planters were not common elements.  Appellants maintain because it is unambiguous that the roof terrace, tenth-floor elevator lobby, and

---

[5] Exhibit A was a letter to Griffin from the Board regarding a safety inspection report it received.
[6] S.C. Code Ann. §§ 27-31-10 to -440 (2007 & Supp. 2024).

rooftop planters are common elements, it was an error to submit these issues to the jury and a directed verdict should have been granted. We disagree.

> Deeds are construed to determine the intent of the parties. To construe a deed, a court looks first at the language of the instrument because the court presumes it declares the intent of the parties. When, and only when, the meaning of a deed is not clear, or is ambiguous or uncertain, will a court resort to established rules of construction to aid in the ascertainment of the grantor's intention by artificial means where such intention cannot otherwise be ascertained.

*Hunt v. Forestry Com'm*, 358 S.C. 564, 569, 595 S.E.2d 846, 848 (Ct. App. 2004) (quoting 23 Am. Jur. 2d *Deeds* § 192 (2002)).

"[I]f the language of the deed is unambiguous, then its interpretation is a question of law to be resolved by the reviewing court without resort to extrinsic evidence." *Id.* (alteration in original) (quoting 23 Am. Jur. 2d *Deeds* § 192 (2002)). "If . . . the language in a deed is ambiguous, the determination of the grantor's intent then becomes a question of fact." *Santoro v. Schulthess*, 384 S.C. 250, 272, 681 S.E.2d 897, 908 (Ct. App. 2009). "In recent years, . . . our supreme court has seemingly discarded the distinction between patent and latent ambiguities in determining whether the interpretation of a document is for the court or the jury." *Harbin v. Williams*, 429 S.C. 1, 8, 837 S.E.2d 491, 495 (Ct. App. 2019). "When the terms of a [deed] are ambiguous, the question of the parties' intent must be submitted to the jury." *S. Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 491, 732 S.E.2d.205, 206 (Ct. App. 2012).

> In an action at law, on appeal of a case tried by a jury, the jurisdiction of the appellate court extends merely to the correction of errors of law, and a factual finding by the jury will not be disturbed unless a review of the record discloses there is no evidence which reasonably supports the jury's findings.

*Wright v. Craft*, 372 S.C. 1, 18, 640 S.E.2d 486, 495 (Ct. App. 2006).

Notably, we need not weigh the merits of the party's claims on appeal but only determine whether an ambiguity existed in the deed and if there was *any evidence*

to support the jury's finding that the roof terrace, tenth-floor elevator lobby, and planters were common elements.[7]  Shoreham's master deed establishes two classifications within the regime: "Dwellings and Common Elements."  It provides that common elements are all of the real property, improvements, and facilities, other than the dwellings, and it further incorporates, by direct reference, the definitions outlined in the Horizontal Property Act.[8] The master deed states that common elements are subject to a "perpetual nonexclusive easement in favor of all the owners of dwellings in the condominium for their use and the use of their immediate families, guests, and invitees . . . ."  Griffin's deed to the Unit states that Griffin and his wife were deeded a "Dwelling" consisting of 2,630 feet squared and an undivided interest in the common elements.

However, the master deed also provides "an individual property capable of independent use and fee simple ownership, and the owner or owners of each dwelling shall own, as an appurtenance of the common elements, the undivided interest appurtenant to each dwelling . . . ."  Further, "all balconies adjacent to each dwelling, including the railing attached thereto, are part of that dwelling and not common areas".

Exhibit A, also taken from the master deed, states: "Access to all floors is provided by both stairways and elevators. . . .  [A]ccess to the single 'Rooftop Penthouse' dwelling on the 10th floor is provided from an elevator lobby which is a common area and stairways to the rooftop area, which is also common.  The rooftop area contains planters which are common."  The parties dispute the meaning of this passage.  According to Appellants, this passage indicates that the roof terrace and tenth floor elevator lobby are both common elements.  Griffin concedes this passage supports the lobby being a common element, but contends the statement "which is also common" refers exclusively to the stairwell and not the rooftop terrace.  Further, Griffin argues that this exclusion was intentional and evidences

---

[7] We address this issue exclusively in terms of the rooftop terrace.  If the roof terrace is not a common element then the planters and tenth floor elevator lobby certainly are not common elements as no other dwelling owner would have reason for accessing either the planters or lobby.

[8] The HPA provides little guidance because it defines "common elements" as "[t]he foundations, main walls, roofs, halls, lobbies, stairways, moorages, walkway docks, and entrance and exit or communication ways in existence or to be constructed or installed."  *See* § 27-31-20(f)(2).  Shoreham does not have a "roof" in the traditional sense and the HPA does not designate "balconies" or "terraces" as common elements.  *See* § 27-31-20.

that the rooftop terrace is not a common element. We find either interpretation is reasonable and accordingly that there was an ambiguity in the master deed.

We agree with the circuit court's finding that there existed ambiguities given the very nature of the property. It is almost inconceivable that the roof terrace was intended to be common. Again, the entirety of the Unit's exterior walls are glass, allowing anyone using the roof terrace a direct view into the Unit. This would leave any occupant of the Unit completely exposed should any other dwelling users access and use the roof terrace. Accordingly, the extrinsic evidence was properly admitted.

Furthermore, the extrinsic evidence submitted supports the jury's finding the roof terrace was not a common element. Though the terrace was accessible to other tenants via the stairwell, to access the rooftop via the elevator required a key belonging to Griffin. Griffin testified he maintained and made improvements to the roof terrace at his own expense including installation of the Turtle Tile and adding shrubs to the planters. Meeting minutes from a 1992 board meeting also indicated that the terrace was intended to be treated as a balcony, which per the master deed, would make it not common. The minutes included the statement "Jim Pike, the attorney responsible for the master deed, stated that the area around the top penthouse would be handled the same as other balconies."

Finally, and we believe most compelling, the roof terrace was, for thirty-six consecutive years (1982-2018), treated as part of the Unit. Griffin and his uncle exclusively used the rooftop terrace. By Aquino's own admission, he nor any member of the Association had *ever* questioned whether or not the roof terrace was a common element prior to 2019. Based on the foregoing, we conclude the circuit court did not err in submitting the common element question to the jury.

## III. Amended Complaint

Appellants assert the circuit court abused its discretion in allowing Griffin to amend his complaint to include an acquiescence cause of action just before trial was to begin. They argue acquiescence was an inappropriate claim and they would have conducted additional discovery to refute the claim if given the time. Appellants assert the acquiescence cause of action is an attempt to claim estoppel, which can only be used as a defense. We disagree.[9]

---

[9] We recognize Griffin's *pretrial* motion to amend was filed under Rule 15(b) of the South Carolina Rules of Civil Procedure, which was procedurally unusual;

Rule 15(b) allows for the amendment of pleadings to conform to the evidence and provides:

> Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.

Rule 15(b), SCRCP.

"It is well established that a motion to amend is addressed to the discretion of the trial [court], and the party opposing the motion has the burden of establishing prejudice." *Collins Ent., Inc. v. White*, 363 S.C. 546, 562, 611 S.E.2d 262, 270 (Ct. App. 2005). "The prejudice that Rule 15 envisions is a lack of notice that the new issue is to be tried and a lack of opportunity to refute it." *Id*.

Complaints should be allowed to be amended so long as the opposing party "is afforded full opportunity to introduce testimony bearing on the subject of the amendment." *Soil & Material Engineers, Inc. v. Folly Assocs.*, 293 S.C. 498, 501, 361 S.E.2d 779, 781 (Ct. App. 1987) (quoting 61A Am. Jur. 2d *Pleading* § 329 (1981)). "The question of allowing an amendment of pleadings to conform to proof, however, is addressed to the sound discretion of the trial judge whose decision will not be disturbed absent an abuse of discretion." *Id*. "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support." *Menne*, 368 S.C. at 568, 629 S.E.2d at 696.

---

however, the circuit court refrained from ruling until evidence to support the acquiescence cause of action was presented at trial.

We find the circuit court did not abuse its discretion. The acquiescence claim is substantially related to Griffin's other claims. Appellants were given six days to prepare and "afforded full opportunity to introduce testimony" to refute the claim. Accordingly, we believe Appellants failed to prove prejudice.

## IV. Finding Evidence of Damages

Appellants argue Griffin presented no evidence to enable a jury to determine the existence of damages or a reasonably certain or accurate amount. They asserted no evidence was presented to show Griffin suffered any losses, and it was an error of law to submit the question to the jury. We disagree.

"As a general rule, the evidence should allow the court or jury to determine the amount of damages with reasonable certainty or accuracy." *Gauld v. O'Shaugnessy Realty Co.*, 380 S.C. 548, 559, 671 S.E.2d 79, 85 (Ct. App. 2008). "Neither the existence, causation[,] nor amount of damages can be left to conjecture, guess[,] or speculation." *Id.* (quoting *Baughman v. Am. Tel. and Tel. Co.*, 306 S.C. 101, 116, 410 S.E.2d 537, 546 (1991)). *See also White v. Whitney Mfg. Co.*, 60 S.C. 254, 267-68, 38 S.E. 456, 461 (1901) (noting speculative damages would not constitute the element of damages).

> The law does not require absolute certainty of data upon which lost profits are to be estimated, but all that is required is such reasonable certainty that damages may not be based wholly upon speculation and conjecture, and it is sufficient if there is a certain standard or fixed method by which profits sought to be recovered may be estimated and determined with a fair degree of accuracy.

*Beck v. Clarkson*, 300 S.C. 293, 298-99, 387 S.E.2d 681, 684 (Ct. App. 1989) (quoting *S.C. Fin. Corp. of Anderson v. W. Side Fin. Co.*, 236 S.C. 109, 122-23, 113 S.E.2d 329, 336 (1960)).

Griffin presented evidence of the loss of rental income that was suffered due to the Association's interference with his property. He testified to the renters that never returned after filing complaints, the amount that he normally charged renters, and the periods in which he was unable to rent due to the actions of Appellants. Griffin provided $20,000 as an estimate for total lost in rental value. Griffin also presented evidence of the loss of his personal property, including his Turtle Tile, which he testified was worth $20,000 at the time of installation. We believe these

estimations were based on more than speculation and conjecture. Therefore, we affirm the circuit court.

## V. Submitting Punitive Damages to the Jury

Appellants argue punitive damages should not have been submitted to the jury because no reasonable jury could have found punitive damages were warranted. They assert the punitive damages award was excessive and unconstitutional, and the jury incorrectly applied the law when awarding punitive damages. We disagree.

"Punitive damages can only be awarded where the plaintiff proves by clear and convincing evidence the defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights." *Austin v. Specialty Transp. Servs., Inc.*, 358 S.C. 298, 313, 594 S.E.2d 867, 875 (Ct. App. 2004).

"There is no formula or standard to be used as a measure for assessing punitive damages." *See Mellen v. Lane*, 377 S.C. 261, 290, 659 S.E.2d 236, 251 (Ct. App. 2008). However, the relevant factors in consideration of punitive damages are:

> (1) the character of the defendant's acts; (2) the nature and extent of the harm to plaintiff which defendant caused or intended to cause; (3) defendant's degree of culpability; (4) the punishment that should be imposed; (5) duration of the conduct; (6) defendant's awareness or concealment; (7) the existence of similar past conduct; (8) likelihood the award will deter the defendant or others from like conduct; (9) whether the award is reasonably related to the harm likely to result from such conduct; and (10) defendant's wealth or ability to pay.

*Id,* at 290, 659 S.E.2d at 251-52. "Under *Gamble* [*v. Stevenson*, 305 S.C. 104, 406 S.E.2d 408 (Ct. App. 2000]*, the trial court is not required to make findings of fact for each factor to uphold a punitive damage award." *Welch v. Epstein,* 342 S.C. 279, 306, 536 S.E.2d 408, 422 (Ct. App. 2000)

"[P]unitive damages may be awarded only upon a finding of actual damages." *Gamble*, 305 S.C. at 111, 406 S.E.2d at 354. "The policy behind awarding punitive damages must also remain consistent with the principle of penal theory that the 'punishment should fit the crime.'" *Atkinson v. Orkin Exterminating Co.*,

361 S.C. 156, 164, 604 S.E.2d 385, 389 (2004) (quoting *Mathias v. Accor Economy Lodging Inc. and Motel 6 Operating L.P.*, 347 F.3d 672, 676 (7th Cir. 2003)). "In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003)).

As stated above, actual damages were awarded. Further, Appellants' actions were in willful disregard of Griffin's rights: Aquino made several false claims in his email; his direct examination revealed that much of his motivation for sending the email was a result of animus towards Griffin's renters; the individual appellants intentionally excluded Griffin from Board meetings during the creation of the Rules; in addition to regulating the use of the roof terrace, the Rules also placed limitations on the Unit without including similar limitations for the other units of Shoreham; and when Griffin filed suit after the Rules were imposed, the individual appellants removed Griffin's property without his permission and imposed prejudicial requirements to restrict Griffin's use of the terrace. Appellants argue that punitive damages were only awarded because the jury came to believe that Griffin was entitled to attorney's fees. They base this on one of the questions the court received from the jury during deliberations: "For damages, do we have to put an actual number, or can it be a phrase such as: 'attorney fees and costs'[?]" We believe there are a number of reasons this question could have been asked. Further, the jury was provided an instruction on punitive damages. We do not believe these instructions were wholly ignored as roundabout way to award Griffin attorney's fees. Rather, the record contains clear and convincing evidence to support the jury's determination that Appellants willfully disregarded Griffin's rights and arrived at a figure they believed to be reasonable and proportional to the damages recovered. Further, as to Appellants' argument that the punitive damages verdict was excessive, the circuit court reduced the jury's award by $40,000. Therefore, we find the circuit court did not err in submitting the issue of punitive damages to the jury.

## VI. Not Joining All Dwelling Owners

Appellants argue Griffin had no right to bring any claim related to the division of the common area because the dwelling owners had an undivided interest in the common areas, and thus the judgment should be reversed. They maintain the remaining Shoreham unit owners should have been added to the action pursuant to Rule 19(a) of the South Carolina Rules of Civil Procedure. We disagree.

> A person . . . shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Rule 19(a), SCRCP.

Appellants cite *BancOhio National Bank v. Neville*, 310 S.C. 323, 426 S.E.2d 773 (1993), in support of their contention that the other dwelling owners were necessary parties.  We distinguish *BancOhio National Bank* from the present case. In that case, our supreme court held that South Carolina Department of Highways and Public Transportation and the Town of West Union were necessary parties when an action was filed to close and abandon a public road.  *Id.* at 324, 426 S.E.2d at 774-75.  However, this case dealt specifically with State owned property.

> We recently held in *Coburg, Inc. v. Lesser*, 309 S.C. 252, 422 S.E.2d 96 [(1992)], that "where the State is the presumed owner of property . . . [it] must be joined as a party defendant, either by motion of one of the parties or, if necessary, by the [c]ourt."  This same rule also applies to any property interest, such as a right of way or easement, where the State has a proprietary interest.  The inescapable conclusion is that the South Carolina Department of Highways and Public Transportation and the Town of West Union are indispensable parties well within the meaning of Rule 19(a).  Here, under the procedural posture of the case, only the trial court or the respondents were the proper parties to join the State and West Union.

*Id.* at 329, 426 S.E.2d at 777 (second and third alterations in original).

As our supreme court explained, the state is afforded additional rights beyond those outlined in Rule 19.  Though *BancOhio National Bank* was Appellants' most

heavily cited case on this issue, we find the facts are not particularly on point. As *BancOhio National Bank* dealt with the rights of the Town and the Department to a road that was going to be closed, it is not relevant precedent. Moreover, Appellants' argument is predicated on a finding that the roof terrace is a common element. This was not the jury's finding. Because the other dwelling owners had no property interest in the roof terrace, they could not have been necessary parties.

## VII. Beckham Testimony

Appellants argue they were unduly prejudiced by real estate appraiser Henry Beckham's testimony. They maintain his testimony created a confusion of the issues and misled the jury. We disagree.

"Evidence which is not relevant is not admissible." Rule 402, SCRE. Rule 403 of the South Carolina Rules of Evidence states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

Appellants argue Beckham's testimony included a damages evaluation that confused and misled the jury causing them to conflate differences in property values with actual damages. We disagree. Although Beckham's testimony may not have been relevant, the jury did not base their decision on it, as the amount the jury awarded was consistent with the figures Griffin testified to related to damages, and not Beckham's figures for change in property value. *See McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987) ("[W]hatever doesn't make any difference, doesn't matter.). Therefore, we conclude Beckham's testimony was not prejudicial to Appellants.

## VIII. Verdict Form

Appellants assert the circuit court's denial of their request to edit the verdict form created confusion as to what the jury's findings were and whether the findings could coexist logically. We disagree.

"The trial [court] has the discretion to determine how a case is submitted to the jury." *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 300, 641 S.E.2d 903, 906 (2007). It is "the duty of the trial [court] to decide what the verdict meant, and, in reaching his conclusion thereabout, it was his duty to take into consideration not only the language of the verdict, but all the matters that occurred in the course of the trial." *Howard v. Kirton*, 144 S.C. 89, 101, 142

S.E.2d 39, 43 (1928). Further, "it is the duty of the court to sustain verdicts when a logical reason for reconciling them can be found." *Daves v. Cleary*, 355 S.C. 216, 231, 584 S.E.2d 423, 430 (Ct. App. 2003).

The verdict form was four pages in total, and numbered one through thirteen. Items three through eleven stated specific parties and causes of action and were as follows:

3. Do you find for the Plaintiff Marshall Griffin against the Defendant Shoreham Towers Homeowners Association?
4. Do you find the Defendant Richard Aquino acted willfully or wantonly?
5. In regard to the civil conspiracy claim do you find for the Plaintiff Marshall Griffin against the Defendant Richard Aquino?
6. Do you find the Defendant Bill West acted willfully or wantonly?
7. In regard to the civil conspiracy claim, do you find for the Plaintiff Marshall Griffin against the Defendant Bill West?
8. Do you find the Defendant Tony Giovino acted willfully or wantonly?
9. In regard to the civil conspiracy claim, do you find for the Plaintiff Marshall Griffin against the Defendant Tony Giovino?
10. Do you find Defendant Carter Tackett acted willfully or wantonly?
11. In regard to the civil conspiracy claim, do you find for the Plaintiff Marshall Griffin against the Defendant Carter Tackett?

Following each item were the words "yes or no." For each item the jury checked "yes." The jury found the Association and the individual Board members liable on separate causes of action. Therefore, we find no contradiction in the verdict form as Appellants claim. The Association breached the contract based on a fraudulent act. Additionally, the Board members acted outside of their capacity as board members when committing civil conspiracy. Accordingly, we find the presentation of the verdict form was proper.

## IX. Terrace Reference

Appellants argue nothing supported Griffin's claim that "balcony" and "terrace" were synonymous or that because there was a railing on the roof area, that made

the area part of Griffin's dwelling. They assert Griffin mislead the jury by referring to the tenth-floor terrace space as a "balcony," confused the issues, mislead the jury, and unfairly prejudiced Appellants pursuant to Rule 403 of the South Carolina Rules of Evidence. Appellants maintain the circuit court's allowance of "balcony" to describe the tenth-floor terrace space was an abuse of discretion. We disagree.

"The trial court's ruling on the admission of evidence will not be disturbed on appeal absent an abuse of discretion amounting to an error of law." *Hawkins*, 330 S.C. at 108, 498 S.E.2d at 404. "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support." *Fields*, 363 S.C. at 26, 609 S.E.2d at 509. "To warrant reversal based on the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, i.e., that there is a reasonable probability the jury's verdict was influenced by the challenged evidence or the lack thereof." *Id.*

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which (a) are rationally based on the perception of the witness, (b) are helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) do not require special knowledge, skill, experience or training.

*State v. Mitchell*, 399 S.C. 410, 416, 731 S.E.2d 889, 893 (Ct. App. 2012) (quoting Rule 701, SCRE).

The circuit court denied the motion in limine on this issue because it determined it to be a fact issue for the jury. The court stated during pretrial motions, "[i]f [Griffin] wants to call it a balcony, he can. . . . You can cross-examine in that regard, but that is the whole issue of this case, basically. [The] jury will figure it out." We agree.

As stated above, the master deed is ambiguous. Accordingly, the issue of whether the roof terrace is a balcony and therefore not a common element per the master deed was a fact issue properly before the jury. As both patent and latent ambiguities existed, extrinsic evidence was allowable. Griffin testified he believed the roof terrace was his private balcony and he referred to and treated the roof

terrace as such since acquiring the Unit.[10]  Additionally, the 1992 meeting minutes support that the roof terrace was common.  As the circuit court found, Griffin's entire argument of the case hinged on the fact that he had an exclusive right to the roof terrace because it was intended to be treated the same as the other dwellings' balconies.  Evidence supporting his assertion that the terrace was his "balcony" and Griffin's use of word was not just relevant but essential to his theory of the case.  Accordingly, we find no error in the circuit court's denial of Appellants' motion in limine on this issue and affirm.

## X.  Directed Verdict and JNOV

Appellants contend Griffin did not establish any breach of contract because his interpretation of the Master Deed was erroneous as a matter of law.  They maintain Griffin also presented no evidence that the Association acted with a fraudulent intent or committed a fraudulent act; therefore, it was an error of law to allow the jury to determine the breach of contract accompanied by fraudulent act cause of action.  Appellants also assert Griffin did not present any evidence of Appellants attempting to exercise ownership or the right of ownership over Griffin's personal property.  They contend Griffin failed to present evidence of the individual Appellants acting outside the scope of their duties as board members as needed for a civil conspiracy claim.

Appellants further assert acquiescence was not an appropriate claim because its application typically applies to physical boundary disputes, not the nature of property, nor is it applicable to horizontal property regimes.  They further argue Griffin's acquiescence theory is barred by section 27-31-70 of the South Carolina Code because Griffin concedes the property was once a common element, which cannot be divided under the statute.  Appellants assert it was an error of law to deny Appellants' motion for a directed verdict as to West, Giovino, and Tackett.  We disagree.

"When reviewing the trial court's ruling on a motion for a directed verdict . . . , this [c]ourt must apply the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party." *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 331-32, 732 S.E.2d 166, 171 (2012).  "[T]he appellate court must determine whether it would have been reasonably possible for the jury to return a verdict for the party opposing the

---

[10] Griffin also alleges the previous owner, his uncle, treated and referred to the terrace as his "balcony."

motion." *Shenandoah Life Ins. Co. v. Smallwood*, 402 S.C. 29, 35, 737 S.E.2d 857, 860 (Ct. App. 2013). "If the evidence as a whole is susceptible to more than one reasonable inference, a jury issue is created and the motion should be denied." *Howard v. Roberson*, 376 S.C. 143, 149, 654 S.E.2d 877, 880 (Ct. App. 2007). The issue must be submitted to the jury if material evidence tends to establish the issue in a reasonable juror's mind. *Parrish v. Allison*, 376 S.C. 308, 319, 656 S.E.2d 382, 388 (Ct. App. 2007). The appellate court will reverse the trial court's ruling only when no evidence supports the ruling or when an error of law controls the ruling. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434-35, 629 S.E.2d 642, 648 (2006). "[N]either the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Erickson v. Jones St. Publishers, LLC*, 368 S.C. 444, 463, 629 S.E.2d 653, 663 (2006). "In deciding whether to grant or deny a directed verdict motion, the trial court is concerned only with the existence or nonexistence of evidence." *Wright*, 372 S.C. at 22, 640 S.E.2d at 498.

"A trial court should grant JNOV when the evidence is insufficient to support the verdict." *Helms Realty, Inc. v. Gibson-Wall Co.*, 363 S.C. 334, 338, 611 S.E.2d 485, 487 (2005).

> In ruling on motions for directed verdict and JNOV, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions and to deny the motions where either the evidence yields more than one inference or its inference is in doubt.

*Jinks v. Richland County,* 355 S.C. 341, 345, 585 S.E.2d 281, 283 (2003) (quoting *Strange v. S.C. Dept. of Hwys. and Pub. Transp.,* 314 S.C. 427, 429-30, 445 S.E.2d 439, 440 (1994)).

"A motion for a [JNOV] is merely a renewal of the directed verdict motion." *Jamison v. Hilton*, 413 S.C. 133, 139, 775 S.E.2d 58, 61 (Ct. App. 2015). "When reviewing the trial court's ruling on a motion for a directed verdict or a JNOV, this court must apply the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party." *Id*. "This [c]ourt can only reverse the trial court when there is no evidence to support the ruling below." *Moore v. Moore*, 360 S.C. 241, 260, 599 S.E.2d 467, 477 (Ct. App. 2004). "We must affirm a trial [court's] denial of a directed verdict motion when there is evidence to support the court's ruling." *Hurd v. Williamsburg*

*County*, 353 S.C. 596, 609, 579 S.E.2d 136, 143 (Ct. App. 2003), *aff'd*, 363 S.C. 421, 611 S.E.2d 488 (2005).

Again, under the applicable standard of review, this court need only determine that there was *some* evidence to support the circuit court's finding.

### a) Breach of Contract

"The merger by deed doctrine provides that 'a deed made in in full execution of a contract of sale of [property] merges the provisions of the contract therein.'" *Carlson v. S.C. State Plastering, LLC*, 404 S.C. 250, 260, 743 S.E.2d 868, 874 (Ct. App. 2013) (quoting *Charleston & W. C. Ry. Co. v. Joyce*, 231 S.C. 493, 504, 99 S.E.2d 187, 193 (1957). "The elements for a breach of contract are the existence of a contract, its breach, and the damages caused by such breach." *S. Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 491, 732 S.E.2d 205, 209 (Ct. App. 2012).

The existence of the master deed is undisputed, which through the merger of deed doctrine, became Griffin's "contract" when he acquired the Unit from his uncle. Further, Griffin presented evidence to support the finding that his rights under the deed were breached by Appellants' actions and he suffered damages as a result.

### b) Breach of Contract Accompanied by Fraudulent Act Claim

A breach of contract accompanied by fraudulent act claim requires the claimant demonstrate: "(1) a breach of contract; (2) that the breach was accomplished with a fraudulent intention[;] and (3) that the breach was accompanied by a fraudulent act." *Minter v. GOCT, Inc.*, 322 S.C. 525, 530, 473 S.E.2d 67, 70 (Ct. App. 1996). "'Fraudulent act' is broadly defined as 'any act characterized by dishonesty in fact or unfair dealing.'" *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 359 S.C. 467, 470, 597 S.E.2d 881, 883 (Ct. App. 2004) (quoting *Conner v. City of Forest Acres,* 348 S.C. 454, 466, 560 S.E.2d 606, 612 (2002)).

Evidence of the deed and its breach were presented. Further, Griffin presented evidence that breach occurred not for Appellant's belief the terrace was common, but as a means of antagonizing Griffin over conflicts between Griffin and other dwelling owners related to his renters. Further, despite his status as a Board member at the time, when the Board sought to create rules and regulations for the terrace, Griffin was wholly excluded from that process. Accordingly, we find evidence was presented of fraudulent intent accompanied by a fraudulent act.

### c) Conversion

"'Conversion' is defined as the unauthorized assumption and exercise of the rights of ownership over goods or personal chattels belonging to another, to the alteration of their condition or to the exclusion of the rights of the owner." *Mullis v. Trident Emergency Physicians*, 351 S.C. 503, 506-07, 570 S.E.2d 549, 550 (Ct. App. 2002).

It is undisputed that Griffin's Turtle Tile and chairs were removed from the roof terrace without his permission.  Therefore, Appellants' motion for directed verdict and JNOV on this issue is predicated on a finding that the roof terrace was a common element and they had the requisite authority to regulate the space including the removal of Griffin's Turtle Tile and chairs.  As there was evidence supporting the jury's finding that the roof terrace is not a common element, there was also evidence to support the jury's finding on this issue.

### d) Civil Conspiracy

A claim for civil conspiracy requires, "(1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 574, 861 S.E.2d 774, 780 (2021).  "[A]lthough a corporation cannot conspire with itself, 'the agents of a corporation are legally capable, as individuals, of conspiracy among themselves or with third parties.'" *Pridgen v. Ward*, 391 S.C. 238, 244, 705 S.E.2d 58, 62 (Ct. App. 2010) (quoting *Lee v. Chesterfield Gen. Hosp., Inc.*, 289 S.C. 6, 14, 344 S.E.2d 379, 383 (Ct. App. 1986), *overruled on other grounds by Paradis*, 433 S.C. 562, 861 S.E.2d 774).

We believe the same facts outlined above to support Griffin's claim for breach of contract accompanied by fraudulent act also support his claim for civil conspiracy. Further, as Griffin was a Board member himself, Appellants cannot say they were acting within the scope of their duties as Board members when they intentionally and without reason excluded Griffin from these meetings.

### e) Acquiescence

"[A]cquiescence is a question of fact determined by the intent of the parties." *Kirkland v. Gross*, 286 S.C. 193, 198, 332 S.E.2d 546, 549 (Ct. App. 1985),

*receded from on other grounds by Boyd v. Hyatt*, 294 S.C. 360, 364 S.E.2d 478 (Ct. App. 1988).

> [I]f a party stands by, and sees another dealing with property in a manner inconsistent with his rights, and makes no objection, he cannot afterwards have relief. His silence permits or encourages others to part with their money or property, and he cannot complain that his interest[s] are affected. His silence is acquiescence and it estops him.

*Jordan v. Judy*, 413 S.C. 341, 348-49, 776 S.E.2d 96, 100 (Ct. App. 2015) (alteration in original) (quoting *McClintic v. Davis*, 228 S.C. 378, 383, 90 S.E.2d 364, 366 (1955)).

While Appellants are correct that acquiescence usually arises in terms of boundary disputes and as an alternative to adverse possession when the hostility element is lacking, we find no case law to suggest that the claim can only be brought exclusively under those circumstances. Accordingly, we find the evidence that Griffin and his uncle were allowed to exclusively use the roof terrace for thirty-six years supports a claim for acquiescence.[11]

### f) Individual Appellants' Immunity

"All directors, trustees, or members of the governing bodies of not-for-profit . . . associations . . . are immune from suit arising from the conduct of the affairs of these . . . associations. This immunity from suit is removed when the conduct amounts to willful, wanton, or gross negligence." S.C. Code Ann. § 33-31-834 (2006).

We find there was evidence that Appellants acted willfully in depriving Griffin of his rights. Accordingly, we affirm.

**CONCLUSION**

---

[11] We do not believe that acquiescence is barred by section 27-31-70 of the South Carolina Code, nor do we believe Griffin's claim is actually a veiled allegation of estoppel as Appellants assert.

Based on the foregoing, the circuit court did not abuse its discretion in admitting references to the TRO, in permitting Griffin to amend his complaint to include a cause of action for acquiescence, in allowing Beckham to testify, in how it submitted the verdict form to the jury, or in allowing Griffin to refer to the terrace space as a balcony. Additionally, the circuit court did not err in submitting the common elements issue, the question of actual damages, or the question of punitive damages to the jury. Further, the circuit court did not err in not requiring other dwelling owners be added as necessary parties. Lastly, viewing the evidence and all reasonable inferences in the light most favorable to Appellants, the circuit court did not err in denying Appellants' motions for a directed verdict or JNOV for the breach of contract, breach of contract accompanied by a fraudulent act, conversion, civil conspiracy, acquiescence, or individual appellants' immunity defenses. Accordingly, the circuit court's determinations are

**AFFIRMED.**

**HEWITT, J., concurs.**

**GEATHERS, J., concurring in part and dissenting in part:** I concur in the majority's conclusion that the disputed language in the master deed was capable of more than one reasonable interpretation. However, I respectfully depart from those parts of the majority's decision concerning the intent of the directors as well as the majority's conclusions concerning the TRO references.

First, I cannot agree that there was clear and convincing evidence of conduct that could be characterized as willful, wanton, or reckless in order to justify a punitive damages award. *See* S.C. Code Ann. § 15-33-135 (2005) ("In any civil action where punitive damages are claimed, the plaintiff has the burden of proving such damages by clear and convincing evidence."); *Taylor v. Medenica*, 324 S.C. 200, 221, 479 S.E.2d 35, 46 (1996) ("A tort is characterized as reckless, willful or wanton if it was committed in such a manner or under such circumstances that a person of ordinary reason and prudence would have been conscious of it as an invasion of the plaintiff's rights."). Rather, the evidence shows that the directors were acting under the advice of counsel and other consultants. Therefore, there was no clear and convincing evidence to support the punitive damages verdict. *See id.* ("A conscious failure to exercise due care constitutes willfulness."); *Cohen v. Allendale Coca-Cola Bottling Co.*, 291 S.C. 35, 40, 351 S.E.2d 897, 900 (Ct. App. 1986) ("It is the present consciousness of wrongdoing that justifies the assessment of punitive damages against the tortfeasor.")

Neither can I agree that there was evidence of a fraudulent intent, dishonesty, or unfair dealing for purposes of breach of contract accompanied by a fraudulent act. *See Conner v. City of Forest Acres*, 348 S.C. 454, 466, 560 S.E.2d 606, 612 (2002) ("The fraudulent act is any act characterized by dishonesty in fact or unfair dealing."). Additionally, I cannot infer any gross negligence from the evidence for purposes of removing the individual directors' immunity or infer Appellants' intent to harm Griffin from the evidence for purposes of civil conspiracy. *See* S.C. Code Ann. § 33-31-834 (2006) (providing directors of non-profit organizations with immunity from lawsuits "arising from the conduct of the affairs of" the organization but removing this immunity "when the conduct amounts to willful, wanton, or gross negligence"); *Hamilton v. Charleston Cnty. Sheriff's Dep't*, 399 S.C. 252, 255, 731 S.E.2d 727, 728 (Ct. App. 2012) ("A defendant is guilty of gross negligence if he is *so indifferent to the consequences of his conduct as not to give slight care to what he is doing*." (emphasis added) (quoting *Jackson v. S.C. Dep't of Corrs.*, 301 S.C. 125, 126, 390 S.E.2d 467, 468 (Ct. App. 1989))); *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 574 n.9, 861 S.E.2d 774, 780 n.9 (2021) ("Since civil conspiracy is an intentional tort, an intent to harm . . . remains an inherent part of the analysis."). Therefore, the circuit court should have set aside the punitive damages award and granted a JNOV as to civil conspiracy and breach of contract accompanied by a fraudulent act.

Finally, the TRO references had little to no probative value. Yet, the danger of unfair prejudice from their admission into evidence was high due to the probability that the jurors would view the mere existence of such an order as an imprimatur on the merits of Griffin's claims. Therefore, the circuit court should have excluded them. *See* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."); *In re Campbell*, 427 S.C. 183, 193, 830 S.E.2d 14, 19 (2019) ("Evidence is unfairly prejudicial if it has an undue tendency to suggest a decision on an improper basis" (quoting *State v. Wilson*, 345 S.C. 1, 7, 545 S.E.2d 827, 830 (2001))). However, the circuit court cured its error in allowing this testimony by instructing the jury that the TRO had no effect on the merits of the case and the jurors were not to consider the order.